## T. J. MIXON ET AL. *v.* L. H. CLEVENGER.

74  67
79  778

74  67
90  344

1. TAX TITLES.  *Ambiguous description.  Pleading.  Code* 1880, § 491.
    Where the complainant, in a bill for the cancellation of a tax title,
    avers his ownership of a tract of land by a valid description and
    identifies it as the delinquent land assessed by an ambiguous de-
    scription, and so sold and conveyed for taxes, and purchased by
    the defendant, the description in the assessment roll and tax deed
    is, by these averments, so applied to the particular tract as to call
    for no response in defendant's answer or the adduction of parol
    evidence, under § 491, code 1880, to apply the same thereto; and
    this effect of said averments is not obviated by complainants' use
    of the words "pretended sale" in referring to the sale for taxes.

2. SAME.  *Assessment.  Approval of roll.  Order that roll be "received as
    corrected."*
    When the minutes of the board of supervisors show that an assess-
    ment roll had been already received and taken up for examination
    and correction, a subsequent order entered thereon that the roll
    be "received as corrected," necessarily means that the board
    thereby finally approved the corrected roll. *Mills* v. *Scott*, 62 Miss.,
    525; *Grayson* v. *Richardson*, 65 Ib., 222, cited.

3. SAME.  *Officer participating in sale grantee in tax deed.  Interest acquired
    after sale.*
    That a deputy of the tax collector, after the land had been bid off
    by a purchaser at a tax sale, acquired an interest therein by con-
    tract with such purchaser before the money was paid, the tax
    deed being made to them jointly, does not invalidate the sale, by
    reason of the assumed incapacity of the deputy to buy at a tax
    sale in the making of which he participated.

4. SAME.   *Tax collector's deed.   Prima facie validity of sale.   Code* 1880,
    § 526.

    The testimony of a tax collector that he did not see how he could
    have sold a tract of land at tax sale in the smallest legal subdivis-
    ions, as required by law, unless he had a map of it, and that he
    did not remember that he had a map, is insufficient to overcome the
    effect of his deed, under § 526, code 1880, as "*prima facie* evidence
    that the assessment and sale of the land were legal and valid."

5. SAME.   *Irregularities attending sale.   Testimony of the tax collector inad-
    missible.*

    The testimony of a tax collector that he failed to offer a tract of
    land sold by him for taxes in the smallest legal subdivisions, as
    required by law, is inadmissible, as going to impeach his own offi-
    cial conduct.

FROM the chancery court of the second district of Perry
county.

HON. W. T. HOUSTON, Chancellor.

The opinion states the case.

*N. C. Hill* and *Brame & Alexander*, for appellants.

1. The description in the tax deed and in the assessment roll is
wholly free from any ambiguity.   The field notes of the United
States survey, as appears from the records thereof in the land
commissioner's office, show that Bowie river is a monument in
said survey.   It is noted on the survey as traversing section 32,
township 5, range 1 west, in Perry county, from north to south.
This court takes judicial notice of the government surveys.
*Muse* v. *Richards*, 70 Miss., 581.   The pleadings made the
description certain, and no proof was necessary.   The cases re-
lied on by appellee do not meet this case.   The case of *Sims*
v. *Warren*, 68 Miss., 447, was that of a patent ambiguity, and
the roll furnished no clue to aid it.   The bill in this case ad-
mits that the land assessed and sold for taxes by said descrip-
tion, was the land claimed by appellant as being east of Bowie
river.   The case of *Dingey* v. *Paxton*, 60 Miss., 1038, was
the case of a patent ambiguity, with nothing on the roll to aid

it.   Even that description, under the act of 1878, would be good.   The same may be said of *Cogburn* v. *Hunt*, 54 Miss., 675, and *Morgan* v. *Schwartz*, 66 Miss., 613.   The more liberal rule prevailing since the act of 1878 and the code of 1880, and under the present law, may be seen in *Herring* v. *Moses*, 71 Miss., 620; *Lochte* v. *Austin*, 69 Miss., 271; *Reber* v. *Dowling*, 65 Miss., 259.   In *Kyle* v. *Rhodes*, 71 Miss., 487, we find a description sustained where land was described by reference to well-known designations by which the boundaries can be made certain.

2. Mixon did not buy.   McCoy bid in the land at the sale, and it was by a subsequent arrangement that the deed was executed to both.   There was nothing objectionable in this.   There is no law prohibiting a deputy to buy.   The whole doctrine is discussed in Blackwell on Tax Titles, secs. 400–405.   It is fully discussed in 25 Am. & Eng. Enc. L., 713.   See, especially, *Hare* v. *Cornell*, 39 Ark., 196; *O'Reilly* v. *Holt*, 4 Woods, 645.   The principle applicable is not different from that applied in *Browne* v. *Carlisle*, 62 Miss., 595.

3. It sufficiently appears that the roll was approved.   Approval will be presumed.   *Grayson* v. *Richardson*, 65 Miss., 222; *Morgan* v. *Blewitt*, 72 Miss., 903.   There is no competent evidence as to what the roll shows.   It is manifest beyond doubt that the word received was intended to mean approved. *Mills* v. *Scott*, 62 Miss., 525; *Grayson* v. *Richardson, supra.* By the laws of 1892 (Laws, p. 28), all assessments of lands for 1889 and 1890 were validated, and this cures the defect, if there was such.

*Watkins & Travis,* for appellee.

The decree of the lower court is correct.

1. The land in dispute was not described in the assessment roll on which the alleged sale was based.   It is so ambiguous as to amount to nothing.   *Sims* v. *Warren*, 68 Miss., 447; *Dingey* v. *Paxton*, 60 Miss., 1038; *Cogburn* v. *Hunt*, 54 Miss.,

675; *Morgan* v. *Schwartz*, 66 Miss., 613; *Pearce* v. *Perkins*, 70 Miss., 276.

2. Appellants admit in their answer that they do not rely on the sale made by the tax collector, but on an agreement and sale subsequently made, when Mixon became a party to the transaction. The title is, for this reason, void. 13 Smed. & M., 330; 22 Am. & Eng. Enc. L., 689.

3. One of the alleged purchasers was a deputy sheriff at the time of the sale. So far as we have been able to ascertain, this court has never passed upon the particular point, but the principle seems to be well established elsewhere, and by implication here, that a deputy cannot purchase at his principal's sale. See *McLeod* v. *Burkhalter*, 57 Miss., 65. The case of *Flournoy* v. *Smith*, 3 H., 62, also holds this by implication. See, also, 22 Am. & Eng. Enc. L., 597.

4. The assessment roll under which the sale was made was never approved by the board of supervisors, as appears from the evidence. "Received as corrected" is no approval, directly or by implication. *Davis* v. *Vanarsdale*, 59 Miss., 367; code 1880, § 500.

5. From the evidence, the land must have been offered in a body, and not in the smallest legal subdivisions, as required by § 521, code 1880.

Cooper, C. J., delivered the opinion of the court.

The appellee exhibited his bill in the chancery court of Perry county to cancel, as a cloud upon his title, a hostile tax title, claimed by the appellants, and, on final hearing, the court decreed in his favor. The lands are a part of the east half of section 32, township 5 north, range 13 west. They were assessed for the year 1890, under the following description: "East half west of Bowie, section 32, township 5 north, range 13 west," and were so described in the conveyance from the tax collector to appellants.

The assessment roll, on which the lands were sold, was prop-

erly returned by the assessor, and went into the custody of the board of supervisors. At the August meeting of the board, an order was made as follows: "Ordered, that the real assessment of 1889 be now taken up for examination and correction." At the same meeting, and subsequent to the above order, the following order was made: "Ordered, that the real assessment for 1889 of this county be received as corrected."

T. J. Mixon, one of the appellants, was deputy sheriff to McCallum, the sheriff and tax collector, and on the day of the tax sale acted as clerk to the collector, noting down the lands as sold by him with the names of the purchasers. The land of the appellee was bid in at the tax sale by the appellant, McCoy. Afterwards, and before the deed was made by the tax collector, an agreement was entered into between Mixon and McCoy, by which Mixon was to pay one-half of the amount bid, and was to have one-half interest in the land, and the collector thereupon, being requested by the parties, made the conveyance to Mixon and McCoy.

The grounds upon which the tax deed is assailed are (1) because of ambiguity in the description of the land on the assessment roll and in the deed; (2) that the assessment roll was never approved by the board of supervisors; (3) that the deputy of the tax collector was a purchaser at the tax sale; and (4) that the whole tract was sold without having first been exposed to sale in the smallest legal subdivision, as required by statute.

By § 491 of the code of 1880, it was, among other things, provided that "parol testimony shall always be admissible to apply a description of land on the assessment roll or in a conveyance for taxes, where such testimony will show what land was assessed and sold, and there is enough in the description on the roll or conveyance to be applied to a particular tract of land by the aid of such testimony." Conceding, for the purposes of this decision, without deciding, that there is an ambiguity in the description of the land, we think it clear that it has been fully explained and the land definitely and certainly

identified. No parol proof was taken by the defendants, but none was needed, for the facts alleged by the complainant, in his bill in reference to the land, removed all doubt, if any existed. The complainant alleged that he was "the legal and equitable owner of the following lands, situated in the second judicial district of Perry county and State of Mississippi, to wit: That part of the east half of section 32, situated south and west of a certain stream known as Bowie river, in township 5 north, and range 13 west, of said county and state." Having deraigned his title to the land, complainant further averred "that, for the fiscal year 1890, the said lands in question was, by H. M. McCallum, the tax collector and sheriff of the said Perry county, pretended to be sold for the taxes due thereon for said year, and deeded to T. J. Mixon and L. S. McCoy, said defendants, in March, 1891, for taxes as aforesaid, for the insignificant sum of 9 and $\frac{27}{100}$ dollars, as more fully appears from a certified copy of said pretended conveyance filed herewith, marked 'Exhibit G,' and prayed to be made and considered a part of this bill of complaint."

If there was any ambiguity in the description of the land, it sprang from the single fact of a failure to designate "Bowie" as a river. If the description had been of so much of the east half of the section as is west of Bowie river, it would have been a perfect one. We judicially know that there is a Bowie river in that section of the state in which the lands lie. The complainant avers, in effect, that this river intersects the east half of section 32, that his lands lie west of the river, that they were delinquent for the taxes of the year 1890, that they were sold by the tax collector for such taxes, bought by the appellants, and that the very deed sought to be canceled was executed by the collector for the purpose of conveying these lands to them. It is true the complainant says the lands were pretended to be sold, but this word pretended is but the usual form of characterizing an act the validity of which the complainant challenges by his bill. It does not suggest that the

lands he claims were not the precise lands with reference to which action was had.    On the contrary, the complainant insists that his lands were those as to which the proceedings were directed.

If there was ambiguity in the description of the land, and the complainant, as he might have done, had averred only that the defendants asserted some claim to the land which ought to be canceled, as a cloud upon his title, it would then have devolved upon the defendants to have offered parol proof " to apply the description of the land on the assessment roll and in the conveyance " to the land claimed by the complainant.    If such had been the state of the pleadings and the defendants in their answer had set up the facts which complainant has stated in his bill, and proved them as alleged, no doubt could exist as to what lands were assessed and sold.    It is axiomatic that a defendant may treat as true all facts averred by the complainant.    He need not restate the facts in the answer, for so to do would make no issue between himself and complainant, and, in the nature of things, no evidence can be required to establish a fact charged by one of the parties and admitted by the other. Nothing would be added to the force of the argument that such evidence should be required, if it were conceded that the complainant was under the necessity of making the averments found in the bill in reference to the assessment and sale of the lands.    It would yet remain true that the averments identified the land, applied the description in the assessment and tax deed to it, and left no issuable fact as to which evidence could be adduced.

2.  The entry of the order by the board of supervisors that the real assessment roll for the year 1889 be received as corrected, sufficiently shows an approval of the roll by the board. The word " received," as here used, cannot have its primary significance, for the former order of the board shows that the roll had already passed into its custody, that it had accepted it from the assessor and taken it up for examination, as required

by law. It had corrected the roll, as the last order shows. There was no one from whom it could then receive the roll, for it was already in the custody of the board, and, necessarily, the meaning of the word, under these circumstances, was that the board finally had accepted with approval, or approved, the completed, corrected roll. *Mills* v. *Scott*, 62 Miss., 525; *Grayson* v. *Richardson*, 65 Miss., 222.

3. The evidence does not support the proposition that the deputy of the tax collector was a purchaser at the tax sale. We do not mean to decide or imply that if such were the fact, the sale would thereby be invalidated. The facts are that the land had been exposed to sale and bid off by McCoy, and nothing remained to be done except the payment of the bid and the execution of the deed, when Mixon acquired an interest in the land. This interest he acquired not by virtue of the tax sale, but by private agreement with McCoy, and the tax collector's conveyance served but to execute that agreement. If McCoy had received the deed from the collector, and had instantly conveyed an undivided one-half interest in the land to Mixon, no one could doubt the right of the parties. While it is true that one may not do indirectly that which the law forbids him to do directly, there is nothing to prevent a man from doing directly that which the law permits him to do indirectly.

4. Section 526 of the code of 1880 provides: "The conveyance made by the tax collector to individual purchasers of land, and the list of lands sold to the state, as aforesaid, shall be *prima facie* evidence that the assessment and sale of the land were legal and valid." No evidence was introduced to show that the lands were not exposed to sale in the manner prescribed by statute, except the testimony of the tax collector by whom the sale was made.

The chancellor sustained the exception of the defendants to the answers of this witness to the fourth, fifth and sixth interrogatories. The exceptions do not appear in the record. We suppose, however, they were grounded upon the incompetency

of the officer as a witness to testify so as to impeach his own
official conduct, but if the testimony had been admitted, it was
wholly insufficient to overthrow the *prima facie* case made by
the deed.    The officer does not state how he sold the land, or
that it was sold in violation of law.    He simply says that, in
his opinion, he does not see how he could have sold the land in
the smallest legal subdivision unless he had had a map of it,
and does not remember that he had a map.

*Decree reversed and bill dismissed.*


WHITFIELD, J., dissenting.

A tax deed, the description in which is void at the common
law, might be upheld, under the statute, if there be " enough
in the description to be applied," by parol testimony, "to a
particular tract of land."    There must, in such case—the case
of a tax deed in which the description was void at common
law—be furnished by the deed or assessment roll some clue
which, when followed by the aid of parol testimony, will con-
duct certainly to, and identify, the land.    Code 1880, § 491
(code 1892, § 3776); *Dodds* v. *Marx*, 63 Miss., 443.    Such is
the statute, and such has been its plain construction.    I agree,
therefore, that, if parol testimony had been offered to identify
the land, it should have been received, and the land, doubtless,
could thus have been identified.    Without such testimony
(none of which was offered), the tax deed is clearly void for
uncertainty in the description.    We have not before us, there-
fore, a case where parol proof was offered, but simply and
merely a case where the tax purchaser stands squarely upon the
description in his deed.    The tract of land is conceded in the
record to embrace but 280 acres, not 320.    It is not, there-
fore, the whole of the east half of section 32.    As the case
must stand, then, upon the description in the deed, and upon
that alone, what is that description?    It is this: "E. $\frac{1}{2}$ west
of Bowie, sec. 32, T. 5 N., R. 13 W."    This is the exact de-
scription in the tax deed and on the assessment roll.    This de-

scription means, clearly and indisputably, not the whole of the east half, but that part of the east half which is west of Bowie. Now, looking to the deed alone, which 280 of the 320 acres constituting the east half does the deed or roll mean? Again, that part of the east half of section 32 west of Bowie. Bowie what? Bowie river? Bowie town? Bowie farm? It fits one, as well as another. Is it possible that any court could fail to hold that this is an ambiguity, which, unaided by parol testimony, renders this deed void? It is said that we take judicial knowledge that there is such a river in the state as Bowie river. Undoubtedly. That is not the point. I presume it is too plain for argument that we do not take judicial knowledge that the word "Bowie," occurring in a tax collector's deed, means "Bowie river." And yet the whole opinion in chief is built upon the assumption that "Bowie" means "Bowie river," though there is no such word as river in the deed or on the roll, and there is no parol testimony that applies to the clue— "Bowie"—and shows that it meant "Bowie river." Judicial knowledge that there is such a river in the state as Bowie river, is a totally different proposition from the one that, when we find the mere word "Bowie" in a deed, we judicially know that means "Bowie river." It is impossible to state a more palpable misconception. Standing on the description alone, the deed is manifestly void for uncertainty in the description.

The court feels the stress of this argument, and tells us that "the ambiguity has been fully explained and the land certainly and definitely identified." How? In the mode pointed out by the statute—parol testimony? Not at all. How, then? By the description which the complainant gives of his own land! It is the usual description, seen in every bill filed to cancel a cloud upon title, contained, I doubt not, in every such bill ever before this court. The complainant is required by statute (§ 501, code 1892) to deraign his title. He must file as exhibits the deeds containing the description of the land he owns. If he did not, he would be demurred out of court. And yet,

say the court, if he complies with the law and describes his land, no matter how void the description in the tax deed may be, the court will seize on the good description he·has used in making the usual averment of ownership, and write it in the tax deed, and thereby make the tax deed description perfect. This method of saving the tax deed certainly possesses the merit of simplicity, but does not commend itself to my mind as sound. A tax collector need not trouble about description—he need not put in any description at all.

But, doubting whether this was altogether sound, my brethren insist that the bill avers that "his [complainant's] lands were sold by the tax collector for such taxes, and bought by the appellants," and say this, too, after just quoting one of the allegations of the bill—that the lands were "pretended to be sold and deeded" by the tax collector. I deny that there is anywhere in this bill any averment that these lands were sold and deeded by the tax collector. I quote now literally the averments of this bill: "Your complainant further shows . . . that, for the fiscal year 1890, the said land in question was, by the tax collector, pretended to be sold . . . and deeded," etc., as fully appears from a certified copy of said pretended conveyance, filed as Exhibit B, and made a part of this bill.

In paragraph 13 the conveyance is again called a "pretended conveyance," and the tax purchase a "pretended purchase." So, again, in paragraph 15, and everywhere throughout this bill, from first to last, over and over again, it is charged that the tax collector did not sell these lands, but "pretended" to sell them; did not make a valid tax deed, but "pretended" to make one. And in paragraph 16 the pleader says: "That said pretended instrument of conveyance in question is void for uncertainty; that the land in question is not described therein; . . . and the said instrument is void and of no effect." I submit that the pleader averred at the outset, as the law required him to do, his ownership, and, of

course, properly described his land. Turning, then (having deraigned his title, which, of course, also showed a perfect description), to the cloud which he sought to cancel—the tax collector's deed—he distinctly and positively, over and over, avers that the said tax sale was pretended and void, and the deed pretended and void. And yet, the court say he averred that the tax collector sold the land—that is, validly sold it—and conveyed it; and appellants bought. In other words, the court holds that, when a pleader avers a sale to be pretended, he means that it is real; and when he avers that the tax collector made a pretended conveyance, he means that he made a valid one; and when he avers that the tax deed was void for uncertainty in the description, he means that it contained a good description! Reduced to its last analysis, that, and that only, is the holding of the court. The court takes not the whole bill, and its plain, natural, and inescapable meaning, but, looking to the description at the outset, shuts out all else, and fearlessly jumps clear of all else, to a construction at war with the whole purpose of the bill. I had never supposed before that the "axiomatic" proposition that what is averred in the bill, and admitted in the answer, need not be proved, was meant to teach us that the averments of a bill are to be wrenched outright from their plain and necessary meaning and effect, and made, by some artificially magical process, to mean just the opposite. It is curious, too, that no such view was dreamed of below, and that, on the contrary, the defendant, understanding these averments of the bill to mean just what they plainly say, vigorously denies that the sale was pretended, or the conveyance pretended, or the description in the tax deed in need of aid of any kind. The court, feeling, apparently, some qualm still about the certainty of its footing, faintly concedes that "if there was ambiguity in the description of the land, and the complainant, as he might have done, had averred only that the defendants asserted some claim to the land which ought to be canceled as a cloud upon his title, it would then have devolved

upon the defendants to have offered parol proof to apply the description of the land on the assessment roll and in the conveyance to the land claimed by the complainant.''

Now, I earnestly submit that the paragraphs of the bill already quoted show indisputably that the effect of the averments —the plain and unmistakable effect—is just that which the court say would have been sufficient to put the tax purchaser to parol proof. But that is not all. Here is a paragraph of the bill that certainly leaves no doubt: '' That in order that the title to said land in question be freed of said pretended charge, and that your complainant's title be complete, undisputed and unclouded as before said pretended sale,'' etc., ''and complainant's title to same now remains subject to said pretended charge, and is obscured by clouds and suspicion cast on it by said pretended claim of defendants,'' etc. Here, then, is the very averment, in substance and essence, which the court say would be sufficient to put the tax purchaser to parol proof!

I submit that to work out from the averments of this bill, filed to cancel this pretended tax title as a cloud, the result the court has reached, is to utterly wrench all these allegations from their natural and necessary meaning, and to do violence to the plainest canons of construction. The complainant is defeated, in short, because the court say he has furnished in the averment of his bill, as to description, a substitute for the parol proof which would have applied the word '' Bowie.'' But what description? The description which the statute says may be aided by parol proof is the description in the tax deed.

Now, manifestly, the only ground upon which the conclusion of the court can rest is, that the parol proof is not needed, because the averment in the bill is an averment that the land complainant owns is the land described in the tax deed. But the averment is the direct opposite of this, to wit: that the tax deed does not describe the lands he owns. It is not at all true that because the complainant describes his land properly, and says the tax collector '' pretended '' to sell '' said lands,'' and

" pretended to convey " " said lands," by the tax deed, he means to aver, or does, in legal effect, aver, or that it is a fact, that the lands described in the tax deed are identical with the lands of the owner.    *Non constat* but that, in fact, he did sell, and did attempt to describe in the tax deed, other lands than the complainant's.

The difficulty of maintaining the view of the court becomes most striking when we take the case of the bill filed to cancel a tax deed on the sole ground of the voidness of the description of the land in it.  Desirous, as I earnestly am, of concurring with my brethren, I cannot conscientiously do so when the difference in opinion amounts to conviction, and, as it does so in this case, I must dissent from the judgment of the court.