JOHN A. REED v. JAMES F. HEARD.

[53 South. 400.]

1. COUNTIES.  *Judicial districts of.   Division, when complete.*

   A statute providing for the division of a county into two circuit and chancery court districts, referring to the electors the question of the location of the county seat for one of the districts, does not disarrange the previous organization of the county until there has been a location of the new county seat, and all governmental functions of the entire county must be conducted at the old county seat until the two districts are put into complete operation.

2. SAME.  *Same.   Taxation.   Tax sale.   Tax deed.   Place of filing.*

   Where a statute provided for the division of a county into two circuit and chancery court districts, making each practically a county in itself, and there was a failure to locate the county seat of one of the districts before the time fixed by law for the sale of lands for taxes, tax sales of land in the entire county were properly made at the old county seat and tax deeds were properly filed there for redemption, and the act dividing the county did not become operative as to such matters until the location of the new county seat.

3. TAXATION.  *Tax deeds.   Evidence.   Description of land.   Code 1906,* § 4285.

   Code 1906, § 4285, making parol testimony admissible to apply a description of land on the assessment roll or in conveyance for

taxes where it will show what land was assessed and sold, etc., does not permit parol testimony to supply a description where a totally void description appears on the assessment roll or tax deed; but testimony may be resorted to where it will show what land was assessed and sold, and there is enough in the description on the roll or conveyance to be applied to a particular tract of land by the aid of the testimony; and where only eighty acres in a government survey were located on one side of a body of water, and forty acres thereof were assessed to one person, parol testimony was admissible to supply the description of the remaining forty acres, assessed to an unknown person, so as to identify such land conveyed by a tax deed.

4. SAME.  *Tax sales.  Objections.  Code* 1906, § 4332.

Code 1906, § 4332, providing that no tax sale shall be invalidated, except by proof that the land was not liable to sale for taxes, or that the taxes had been paid before sale, or that the sale had been made at the wrong time or place, presupposes that land has been validly assessed, and limits the defenses that may be made to a tax deed.

FROM the circuit court of, second district, Tallahatchie county.

HON. SAMUEL C. COOK, Judge.

Reed, appellant, was plaintiff in the court below; Heard, appellee, was defendant there.  From a judgment in favor of the defendant the plaintiff appealed to the supreme court.  The opinion of the court states the facts of the case.

*Broome & Woods,* for appellant.

An insufficient description of lands can be aided by extrinsic evidence where the assessment roll furnishes the clue, which, followed by the aid of such evidence, will lead to the land intended. The only constitutional requirement, so far as identification is required, requisite to valid taxation of land, is that there be some way of identifying it.  Code 1906, § 4285.  *Mixon v. Clevenger,* 74 Miss. 67; *Illinois, etc., R. Co. v. LeBlanc,* 74 Miss. 650.

The land sold at tax sale on June 2, 1902, was land which had escaped taxation, and was so sold in accordance with a previous order of the board of supervisors, regularly made and entered upon its minutes under the provisions of Code 1892, § 3850.

On June 2, 1902, the same day on which the land was sold at tax sale, the board of supervisors met at Charleston, and the last order that day entered on its minutes declared the result of the election held under the act of 1902, fixing the other or new county site at Sumner. The legal presumption is that the order of the board was passed after the tax sale, or the tax sale was had prior to the entering of the said order by the board.

The record in this case further shows that it was not until June 4, 1902, that quarters for the courthouse at Sumner were located or selected by the board. The record shows affirmatively that the sale took place even before the result of the election was declared, and before the selection and location of the courthouse at Sumner had been fixed and determined upon by order of the board. But should it be determined, for the sake of argument, that such is not affirmatively shown, it would yet avail the appellee nothing, for the reason that the law wisely presumes tax sales valid. This being true, as a necessary sequence, the burden of showing the contrary devolves upon the appellee and this burden he has failed to meet.

At the time this sale was made, the result of the election fixing the other county site at Sumner had not been declared; no courthouse had been located; no offices designated; no records of any kind secured or in existence for putting into effect and operation the machinery of the second judicial district, the place for the filing of the lists of lands sold as well as of the deed of the tax collector, was legally at Charleston, in the first district. But as a matter of fact, it can not be said in which district it was filled, and such being true, the court will presume that the

same were filed in the proper district. If it should be held that the deed ought to have been filed in the second district, it will be presumed, in the absence of evidence to the contrary that it was so filed. And this presumption will be strengthened by the recital on the deed, which reads: "Filed, John T. Neely, clerk." The said John T. Neely was at that time clerk of the chancery court, Tallahatchie county, which included what are now the first and second districts of said county; and it will be presumed that he did his duty by filing in the proper district. The tax collector's deed raises the presumption of the proper filing of the deed in the office of the chancery clerk, within the time fixed by law. And this presumption the appellee has failed to overcome.

*Dinkins, Caldwell & Ward,* for appellee.

Appellant claims title through a tax sale made June 2, 1902. The sale was made by virtue of an order of the board of supervisors passed at the May term, 1902.

It will be observed that the order of the board, in general terms, directs the sheriff and tax collector to sell all lands delinquent for the nonpayment of taxes for the year 1901, heretofore not sold, without specifying what lands are delinquent and were not sold at the regular time. This order instead of designating what lands were delinquent and liable to such sale, in sweeping terms ordered the sheriff and tax collector to sell "all lands delinquent for the taxes of 1901," and leaving to the tax collector power to designate such lands as he may deem delinquent, and were not sold at the regular time.

This order of the board was made in accordance with section 4 of chapter 67, Laws 1902, and does not direct the sheriff to sell this or any other particular land, the sale is therefore void and no title vested in appellant by virtue of this sale.

The sale made by the sheriff and tax collector of the land in controversy is void, because it was made at the wrong place. The board of supervisors had no authority to order the sale made

at Charleston.   On February 15, 1902, Laws 1902, chapter 135,. took effect, and was in force from that time.   Under this chapter the county of Tallahatchie became divided into two court districts, and the order of the board directing the sheriff to sell the land was made at its May, 1902, meeting, and after the above laws had gone into effect; hence the sale should have been made in the second district of said county.   Laws 1902, § 3, provides. that sales of lands made by the sheriff under execution and otherwise in the discharge of his official duties, shall be made as follows: "Such lands as lie in the first district, he shall sell at Charleston, and such lands as lie in the second district, he shall sell the same at the door of the county courthouse, at the county site to be established hereafter."

Neither the board of supervisors nor the tax collector has any legal right to fix the place of sale of lands for.taxes.   The statute fixes the place of sale, and a sale made at a place other than as. so fixed, shall be void.   The land in controversy is situated in the second district of Tallahatchie county, and should have been sold at the county site established in said district.   The tax deed of the appellant is void for uncertainty of description, and cannot be aided by reference to the assessment roll.

If this court should hold that the ambiguity in appellant's. deed is a latent one, and parol testimony be admissible to apply a description of the land on the assessment roll, or in the tax deed, we contend that the testimony here fails to identify the land assessed or the charge upon it.   Unless a valid assessment is shown, it is useless to try to show what land was sold, since a valid assessment is a prerequisite to a valid sale.

It is essential to the validity of a tax deed that it be dealt with as required by law.   A strict compliance with the statute with reference to the tax deed in question was necessary to vest title to the land in controversy in appellant.   *Adams v. Mills,* 71 Miss. 150; *Sintes v. Barber,* 78 Miss. 385.

Section 79 of the constitution of the state of Mississippi, guarantees to every owner of lands or person interested therein, the right of redemption from sales of same for non-payment of taxes. And see Code 1892, § 3823.

Laws 1892, chapter 135, which divides the county of Tallahatchie into two court districts, and which was approved on February 15, 1892, and became effective on that date, provides that the circuit and chancery clerks shall keep offices in both the first and second districts of said county.

The evidence clearly shows that the chancery clerk did not comply with the requirements of section 5 of the act above cited with reference to the tax deed through which appellant claims title to the land in controversy. The deed was not filed at the county seat after the location of the county site at that place, and was not kept in the office of the chancery clerk for two years or any part of that time as the law requires.

It is argued by counsel for appellant that, inasmuch as the sale took place at Charleston, in the first district, the deed and list of lands sold should have been filed at that place. But under the provisions of section 5, Laws of 1902, chapter 135, it becomes the imperative duty of the chancery clerk to file all deeds, deeds of trust, and other conveyances, relating to property situated in the second district, at his office in said district. The land in controversy is situated in the second district, and persons interested would naturally apply to the chancery clerk in said district to ascertain if their lands had been sold for taxes. The requirements that conveyances should be deposited and remain on file in the office of the chancery clerk of the county in which the land is situated, was manifestly for the benefit of the owner of the land, who, by law, is pointed to the place where he should apply for the purpose of ascertaining whether or not his land has been sold for taxes and for the purpose of redeeming the same.

MAYES, C. J., delivered the opinion of the court.

John A. Reed brought an ejectment suit against J. F. Heard to recover possession of forty acres of land, located in Tallahatchie county, and described as the W. ½ of N. W. ¼, section 24, township 25, range 2 W., east of the bayou. The declaration alleges that the land sought to be recovered is all the land in the W. ½ of the above quarter section situated east of the bayou. The title of Reed depends upon the validity of a tax sale made by the tax collector on June 2, 1902, for the delinquent tax of 1901. The land in question was assessed in the year 1900 on the regular land roll, and this roll was made up and approved as required by law and used by the sheriff at the time of the sale. A part of this land, containing forty acres, was owned by and assessed to one W. D. Buford, and that part not assessed to W. D. Buford was assessed to "Unknown." We give the exact description of both tracts as they appear on the assessment roll. W. D. Buford is assessed with "forty acres in the W. ½ of N. W. ¼, Sec. 24, T. 25, R. 2 W., west of the bayou." "Unknown" is assessed with forty acres in the W. ½ of N. W. ¼, section 24, township 25, range 2 W. Mr. Buford paid the tax assessed on his forty-acre tract for the year 1901, and has receipt for same; but the tax on the forty acres assessed to "Unknown" was not paid for the year 1901, and in May, 1902, the supervisors made the following order in reference to the sale of land delinquent for nonpayment of taxes in the year 1901, viz.: "It is ordered by the board that R. J. Thompson, sheriff and tax collector of this county, proceed on the first Monday of June next to sell all land delinquent for nonpayment of taxes for the year 1901 heretofore not sold, after giving notice by advertisement of sale as prescribed by law." This order was made on the 7th of May, 1902. On the 2d day of June, 1902, the land in question was sold for the tax of 1901, and bought by J. A. Reed. The deed was made on the 9th day of June, 1902, and that day filed in

the office of the chancery clerk at Charleston, the county seat of the first district, but was not recorded until the 15th day of November, 1907.

One of the contentions made by appellee is that the tax sale was void, because not made at the proper place. The facts bearing on this point are as follows, viz.: The legislature of 1902, by an act approved in February, directed the division of the county of Tallahatchie into two circuit and chancery court districts. It is claimed that at the time of the sale of this land for taxes the sale was made in Charleston, in the first district; whereas, the land lay in the second district, of which Sumner was the county seat. It seems that the election resulting in the selection of Sumner as the county seat in the second district had been held as provided for by the act, prior to the June meeting of the board; but the report of the election commissioners was not made to the board, and there was no official action of the board declaring the result of the election until the June meeting, 1902, which was the meeting next after the tax collector had been ordered to make sale of delinquent tax land. Up to the June meeting, and on the 2d day of June, no county seat for the second district had been established anywhere, and the sale of the land in question was made at Charleston, the only county seat then in existence, and on the 2d day of June, the very day that this report was made. It also appears from the record that the board did not establish any courthouse for the said second district until the 4th of June, 1902, two days after the sale, and the first official act of the clerk in the new district seems to have been on the 10th of June. Heard bought the land from one Vance some time in 1903, and paid taxes on same from that time until the institution of this suit.

The cause was tried before the court without a jury, and at the conclusion of the testimony a judgment was rendered in favor of Heard, and the tax title declared a nullity. From this

judgment an appeal is prosecuted to this court. There are a great many contentions urged by counsel for appellee, many of which are not of sufficient importance to notice here, so we content ourselves with a discussion of only those questions which we deem material.

It is contended that this title is void, because the sale was made at the wrong place. As to this contention little need be said. The sale was made at the only county seat then in Tallahatchie county. While it is true that the legislature passed an act creating another district, and that this act was passed in February previous to the sale, it is also true that the legislature referred back to the citizens of the county, for popular choice, the question of where the county seat for the second district should be located, and this question was not settled at the time of the tax sale. It is clear that the legislature did not intend to interfere with the organization of the county until there had been a complete identification of the seat of government in the second district, and the governmental functions of the county were, and should have been, conducted in the county seat of the first district until the two districts were put in complete operation.

It is next contended that the tax sale is void, because the tax deed was not filed in the office of the clerk of the chancery court, as required by Code 1906, § 4338 (section 3823, Code 1892.) It is contended that the deed was filed on the 9th of June in the office of the clerk in the first district at Charleston; whereas, the land lay in the second district, and the deed should have been filed by the tax collector there. The answer of this contention is twofold: First, it appears that the chancery clerk's office at Sumner, in the second district, did not really open until the 10th day of June, one day after the filing of the deed by the tax collector in the office of the clerk at Charleston, the place where the sale was made; and, second, the deed was properly filed at the place where the lawful sale was made, which was Charleston.

It is next insisted by appellee that the tax deed is void for

uncertainty in description, and the case of *Smith v. Brothers,* 86 Miss. 241, 38 South. 353, is relied on. The description in the deed shows that "forty acres in the W. ½ of N. W. ¼" was conveyed to Reed by the tax collector. Buford's tax assessment and tax receipt, aided by his oral testimony, show that Buford owned, paid the taxes on, and was assessed with "forty acres in the W. ½ of N. W. ¼" of the same section lying west of the bayou. Since there are only eighty acres lying in the W. ½ of N. W. ¼, and forty acres lying west of the bayou are assessed to Buford, it necessarily follows that the remaining forty, assessed to "Unknown," was the land conveyed by the tax deed, and parol testimony was admissible to apply the description. This case falls within the provisions of Code 1892, § 3776, Code 1906, § 4285, providing that "parol testimony shall always be admissible to apply a description of land on the assessment roll, or in a conveyance for taxes, where such testimony will show what land was assessed and sold, and there is enough in the description on the roll or conveyance to be applied to a particular tract of land by the aid of such testimony."

The facts of this case bring it within the rule announced in *Mixon v. Clevenger,* 74 Miss. 67, 20 South. 148, and the case of *Smith v. Brothers,* 86 Miss. 241, 38 South. 353, has no application to the facts of this case. We will discuss the case of *Smith v. Brothers, supra,* a little later, suffice it here to say that it did not overrule or refer to the case of *Mixon v. Clevenger,* 74 Miss. 67, 20 South. 148, which is now, and must continue to be the law of this state until there is a repeal of Code 1906, § 2485. The case now under consideration by the court is a much stronger one for the application of Code 1906, § 4285 (Code 1892, § 3776), admitting parol testimony to apply a description on the assessment roll, etc., than was the case of *Mixon v. Clevenger,* 74 Miss. 67, 20 South. 148, *supra.* In *Mixon v. Clevenger* no specific number of acres was stated, but the land was simply as-

sessed as the "E. ½ west of Bowie, section 32, Twp. 5 N., range 13 west," and the court held that even on this description the statute applied, and parol testimony would be admissible to apply the description.    In the case we are now considering, the description is of "forty acres in the W. ½ of N. W. ¼, section 24, Twp. 25, R. 2 W."    Clearly the statute applies here, since the assessment rolls show that forty acres of the W. ½ of N. W. ¼ west of the bayou is assessed to and owned by Buford, and the only other forty in the tract is bound to be the forty assessed to "Unknown," since that makes up the complete number of acres in the above subdivision.

The case of *Smith v. Brothers* was doubtless decided as it ought to have been.    The description in *Smith v. Brothers,* 86 Miss. 241, 38 South. 353, was as follows: "Home lot 6, block 4, ward 1."    This description was held to be a nullity, and the tax deed under it a nullity.    In the above description there were no fixed boundaries by which the description of the land might be definitely and accurately ascertained, either in the assessment or the deed.    The whole of the description would necessarily have to be made out by parol testimony, and the statute does not provide that this may be done; but parol testimony is permissible to apply a description of land on the assessment roll, etc., where such testimony will show what land was assessed and sold, and there is enough in the description on the roll or conveyance to be applied to a particular tract of land by the aid of such testimony.    Code 1906, § 4285.    In the case of *Smith v. Brothers* it does not appear that there was enough in the description on the rolls to identify the lands by parol, and of course the statute had no application.

We have no fault to find with the decision in the above case, but the language is broad and misleading when it is sought to apply it to any but its own facts.    *Bowers v. Andrews,* 52 Miss. 596, is not the law of this state as to what shall constitute a

97 Miss.—48

sufficient description of land in an assessment, and has not been the law of this state since the adoption of Code 1880, § 491, which became Code 1892, § 3776, and Code 1906, § 4285. The above sections of the Code were adopted for the very purpose of abolishing the rule laid down in *Bowers v. Andrews, supra.* Of course, the sections above do not permit parol testimony to supply a description where a totally void description appears on the assessment roll or tax deed; but such testimony may always be resorted to, whether the ambiguity is patent or latent, where such testimony will show what land was assessed and sold, and there is enough in the description on the roll or conveyance to be applied to a particular tract of land by the aid of such testimony. Section 4332, Code 1906 (section 3817, Code 1892), provides what defense may be made to a tax collector's deed, and this section is exclusive of all others. It says that the tax collector's deed "shall vest in the purchaser a perfect title to the land sold for taxes, subject to the right of redemption; and no such conveyance shall be invalidated in any court except by proof that the land was not liable to sale for taxes, or that the taxes for which the land was sold had been paid before sale, or that the sale had been made at the wrong time or place."

Not one of the causes enumerated in the above section as furnishing a defense to a tax deed existed in this case. Of course, section 4332 presupposes that the land has been validly assessed, and the valid assessment means that it has been described in such a way as that it is accurately described in the assessment roll or tax deed, or may be accurately described by resorting to the provisions of Code 1906, § 4285, Code 1892, § 3776. The legislature may, and has, provided what shall be a sufficient description and how it shall be established, if the method is such as to point out with certainty the land assessed. Of course, this must be done in some way provided by the legis-

lature. The law imposes some duty on the taxpayer, as well as the tax assessor.

The case of *Smith v. Brothers* is overruled, insofar as it conflicts with this decision.

The decree is *reversed* and cause *remanded.*