Bartlett vs. Beardmore and others.

Bartlett, Appellant, vs. Beardmore and others, Respondents.

*September 25 — October 15, 1889.*

*(1) Highways: Invalid order laying out: Evidence: User. (2) Appeal to S. C.: Material error.*

1. An invalid order laying out a highway is not admissible in evidence as a foundation for showing that a certain place is a highway by user, when it does not describe such place as an intended highway and the other evidence shows that there was no intention to lay out a highway at that place.
2. The admission of such an order and the statement of the trial court to the jury that it was admitted as some evidence of a highway by user, is *held* a material error in this case, the jury having found, against a preponderance of the evidence, that the place in question was a highway.

APPEAL from the Circuit Court for *Winnebago* County.

Action of trespass *quare clausum*. The facts are sufficiently stated in the opinion. The jury found that the locus *in quo* had become a public highway by user. Judgment on the verdict was rendered in favor of the defendants, and the plaintiff appealed.

For the appellant there was a brief by *Gary & Forward*, and oral argument by *C. H. Forward*.

*Gabe Bouck*, for the respondents.

TAYLOR, J. The appellant, *Bartlett*, brought this action against the respondents to recover damages for breaking and entering his close, and tearing down his fences, and doing other damage. The respondents answered — *first*, a general denial; and, *second*, that the locus *in quo* was and is a public highway; that the fence described in plaintiff's complaint was in such public highway and was an unlawful obstruction thereof; that the board of supervisors of the town in which the same was situated ordered said fence removed from said highway; and that, in pursuance of such order, the respondents removed the same, causing no unnecessary damage, etc.

On the trial there was no question made as to the removal of the fence by the respondents, as alleged by the appellant, nor as to the ownership of the fence or the lands upon which the same was situate. The only issue tried was whether the fence was within the boundaries of a public highway. There was no claim made by the defendants and respondents that a public highway had ever been regularly laid out and opened at the place where such fence was situated, but it was claimed that there was a highway at that place by public use for a long number of years. The facts in regard to the alleged road are as follows:

The plaintiff is the owner of the E. $\frac{1}{2}$ of the S. W. $\frac{1}{4}$ of section 8, in township 19 N. of range 16 E. The location

of the fence in question was on, or a very little south of, the north line of the plaintiff's eighty acres of land, and extended from a point about twenty-five rods east of the northwest corner of said eighty acres, east a little over six rods. The plaintiff has been in the actual possession of said eighty acres from some time previous to 1850. It appears that in 1850 there was a state road laid out along the west end of the north line of the plaintiff's eighty acres. The record of said road describes the road at this place as "running from the quarter post on the west side of said section 8, township 19, range 16, east one hundred rods; thence north 56 degrees east, sixty-four rods,"— and it is claimed by the plaintiff that this road was opened by the removal of the fences, both on the north and south sides of this line, two rods from the north line of his eighty acres; that such fence was removed by him south from the north line for the distance of twenty-three rods and twenty links, which would be nearly a rod further east than was called for by the survey, if the west quarter post of said section 8 was eighty rods west of his west line, as it ought to be by government survey. He also claims that the original road, as traveled from the time it was opened in 1850, or about that time, always diverged to the northeast from the east end of his fence, which was twenty-three rods east of the west line of his land, as indicated in the survey. Upon this question there is no dispute, as the traveled track, which all the evidence tends to show is the same as it was twenty years ago, diverges to the northeast a little west of the end of the plaintiff's fence, which was removed two rods south of his north line. It is also very plain that if the road diverged to the northeast at the point indicated in the survey of 1850, the fence which was removed by the defendants would not be within the bounds of the highway four rods wide. This question is not seriously controverted by the defendants.

It is, however, claimed on their part that, some time after the state road was laid out and opened, there was a change made in the direction of the road from a point just west of plaintiff's barn, and which was about the point of divergence to the northeast according to the survey of the state road, so as to carry the point of divergence east of the west end of the plaintiff's barn about six rods. If the point of divergence of the road was either changed by the action of the lawful authorities, or changed practically by a continued use of the road as a public highway east to the point of divergence contended for by the defendants, then the plaintiff's fence would be within the boundary of the highway.

It is not contended that there was any lawful change of the point of divergence in said highway from that established by the original survey of the state road, made by the authorities of said town, but it is claimed that there was an attempt to make such change in the highway in 1859; and an order of the supervisors of said town, dated June 16, 1859, which was supposed to make some change in said highway by carrying the point of divergence of said highway further east, was made at that date. It was admitted that such order was not lawfully made, and the order itself, unexplained, is too indefinite to locate the changed direction of the highway at this point. The defendants offered this order of the supervisors in evidence, and the plaintiff objected to its receipt in evidence as being incompetent and immaterial. The defendants claimed that it was competent to lay a foundation to show a user of the road in question for the requisite time under the statute. But one of the supervisors whose names are affixed to the order was called as a witness on the trial of this action, and he testified that the road was changed from some point northeasterly of the school-house, so as to run in a southwesterly direction until it touched the north line of the

plaintiff's land, some rods easterly from his barn; and that the plaintiff had at that point a fence on his north line, running westerly towards his barn, and that he refused to extend the road across or south of said fence at all. So that it appeared that the alteration, attempted to be made in 1859, not only did not change the road at the point in controversy, but that it was not intended to be changed at that point.

The learned judge instructed the jury upon the illegal record offered in evidence by the defendants as follows: "The record that a highway was attempted to be laid out there has been in evidence, not because it constitutes a legal highway, but as some evidence of being a highway by user." To this instruction the plaintiff duly excepted, and the appellant alleges as error the admission of the record as well as the instruction of the court as to its effect as evidence.

We do not decide that an attempt to lay out a highway by the proper authorities, and the making of an order laying out such highway, although invalid because of some irregularity in the proceedings, might not be properly received in evidence upon the question of a highway by user, when it appeared that the route described as a highway in such order had been thereafter opened and used as a highway; but we are unable to comprehend how an attempt to lay out a highway, when the description of the way in the order does not describe the point in dispute as an intended highway, and when the other evidence in the case clearly establishes the fact that there was no intention to lay out a highway at the place in controversy, can tend to prove a highway at such point by public user.

It might be urged that the error of the court in permitting the introduction of this evidence, and his comment on its effect to the jury, could not have prejudiced the plaintiff's case and ought not to reverse the judgment. Had the

defendants made a strong case in favor of their contention that the *locus in quo* was a public highway by user, we would perhaps hesitate to reverse the judgment in their favor. But after a careful reading of all the evidence in this record, we think the preponderance of the evidence is against the claim made by the defendants and in such case we are not at liberty to say that this inadmissible evidence, and the comment thereon by the learned judge, did not prejudice the plaintiff.

As the judgment must be reversed for this error, it becomes unnecessary to discuss the other questions urged by the learned counsel for the appellant as reasons for reversing the judgment.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.