Indianola Light, Ice and Coal Company et al. *v.* Hugh M. Montgomery et al.

Dedication. *Streets. Extent. Acceptance.*

> Where the owner impliedly dedicated a strip of land for a street by platting his land into lots and streets, making a map thereof and selling the lots as laid out on the map, the fact that the municipality, for more than ten years thereafter, used only a portion of the land designated as a street, did not deprive it of the right to use the entire strip for a street when necessary for the convenience of the public.

From the chancery court of Sunflower county.

Hon. Julian C. Wilson, Chancellor.

Montgomery and another, appellees, were complainants in the court below; the Indianola, etc., Company, appellant, was

defendant there.  The suit was to confirm complainants' title to a small piece of land.  The defense was predicated of the idea that the land in controversy constituted a part of a street in the town of Indianola.  From a decree in complainants' favor the defendant appealed to the supreme court.

The town of Indianola is nearly square.  About one-half of the town is south of Indian bayou, which runs east and west. On the south side of the bayou is the business part of the town, and on the north side is the residence portion of the town.  On the south side of the bayou is Front street, running north and south up to a street running parallel with, and immediately on the banks of, the bayou.  Front street, up to the bayou, is sixty-six feet wide.  The lot in controversy is what would be included in the street extended across the bayou, except so much of it as is covered by a bridge over the bayou from north to south.  The record shows a deraignment of title in appellees from the United States government, through mesne conveyances, to themselves.  Appellants claim that the lot was dedicated as a street to the town of Indianola, and they claim by privileges granted by the town.  The evidence shows that in 1881 the S. E. 1-4 section 31, township 19, range 4 W., of which the lot in controversy formed a part, was owned by G. K. Smith and others, and about that time a map was made by one Lusk, a surveyor, of a portion of this land, lying south of Indian bayou, dividing it into town lots, and on this map a street running north and south up to the south bank of the bayou was laid off, sixty-six feet wide, known as "Front street," and up to the southern boundary of the lot in controversy; that in 1883 the lot in controversy and other land were sold to P. Barnett by the then owners, but this particular lot was never sold to anybody until complainants purchased it in January, 1903, before this suit was filed, in May, 1903; that in 1888 G. K. Smith and others purchased the land lying north of Indian bayou, and caused a map to be made of it, and sold it as divided in the map, as town lots, and the residence portion of

the town of Indianola was built there; that about this time a bridge sixteen feet wide was built across the bayou, the south end of which extended into Front street, and on the north side there was a vacant plot of land about one hundred and eighty feet wide, several streets intersecting at or near the north end of the bridge. The bridge was used all the time, after it was first erected, by the public, in crossing the bayou from north to south. The bridge was afterwards rebuilt and made twenty feet wide. It is contended for appellees that, as the public has used the bridge across the bayou for ten years, its right and title are limited to the actual land used for street purposes.

*Johnson, Chapman & Neill,* for appellants.

A right of way across the lot in question is conceded. Describing the property sued for, the bill excepts so much of the ground as is covered by the bridge. That the street known as Front street on the map, sixty-six feet wide, extends across the bayou is conceded. The only question in controversy is the width of the right of way across the bayou. Were this level ground, there would be no room for controversy; both authority and reason establish under the circumstances and facts in this case that the street would be at least sixty-six feet wide over the disputed territory. There might be a question as to whether it was merely sixty-six feet of uniform width or, commencing at sixty-six feet, would widen out to fit the surveyed plat on the north side of about one hundred and eighty feet. The ground where this way is located has been used for street purposes since the survey on both sides of the bayou. The plat and survey on the south side of the bayou was made in 1887; that on the north side of the bayou, in 1888. With the exception of the frame building erected by Cohn on the east side of where the bridge now stands, on the opposite side from the lot in controversy, and which stood from the year 1894 to the year 1896, there has never been any adverse occupation against the claim of the public as a street. The right of way being conceded, we

ask, How is its width to be determined? It certainly could not be determined by the travel across it. On account of the condition of the ground, or maybe the mere fancy of the public, all the travel might be confined to one side of the lot, inside of a space of not over ten feet; but certainly the grant which is presumed from the long use would not be confined to this actual space trodden by the public. Where a right is gained by prescription, as in the case at bar, instead of by original grant, the theory of the law is that there was an original grant, which on account of its antiquity cannot be proven, and what we call prescription, long use, is but conclusive evidence of an original grant. Washburn on Easements, 130. A nonuser of a part of the street covered by an actual grant does not deprive the public of their right in it. See notes to 9, L. R. A., 94; *Briel* v. *Natchez,* 48 Miss., 436.

*Harris & Powell,* on the same side.

The difference in the contention of the two parties to this suit seems to be that appellees proceed on the ground that there has been no adverse actual occupation of the strip across the bayou, except as the same is occupied by the bridge, which is not true, while appellants contend that such actual occupation of the whole is not necessary, although actual occupation is shown by the evidence as to a large part of the property in controversy, because they claim by dedication as well as by adverse occupation. Dedication may be made in two ways: by express dedication or by deed or map, or by implied dedication, which is one arising by operation of law, from acts of the owner. "It may exist without any express grant, and need not be evidenced by any writing nor by any form of words, oral or written. It is not founded on a grant, nor does it necessarily presuppose one, but is founded on the doctrine of equitable estoppel. If the donor's acts are such as indicate an intention to appropriate the land to the public use, then upon acceptance by the public

the dedication becomes complete." Elliott on Roads and Streets (2d ed.), 123, 124.

The whole question seems to resolve itself into what was the intention of the parties in making the various plats and surveys of the town both on the north and south side of the bayou. As a side light upon this subject the fact that the town widened the bridge several years ago to twenty-six feet without objection ought to be considered. Again, the property, though in the heart of the town, was not attempted to be conveyed for many years, and then only two months before the bringing of this suit. It was then evidently purchased to bring this suit and hold up the town. When Front street on the south side of the bayou was laid off, the town was a mile square and Front street ran up to the bridge, which was in the center of the town. The land on the north side was then owned by G. K. Smith, who dedicated the street and who manifestly intended to open up and sell, and who did a year after plat and sell, the land on the north side. Now is it possible that he only intended the street to be sixty-six feet wide up to the bridge and there shrink to a twenty-foot strip across the bayou? Streets are usually the same width throughout, and in the absence of proof the intention of a party dedicating a street must be presumed to have been to follow the usual custom. The public and the surveyors who platted and mapped the town indulged this view, that the street throughout was sixty-six feet wide, as is evident from the map on file, and the testimony in the case, notably of Welsh. The town evidently believed that the street extended across the bayou the full width, because it widened the bridge and granted rights of way to the telephone company and electric light company on each side of the bridge and forced Cohn to move back his house to the sixty-six foot line. The original owners of the strip evidently concurred in this idea, because they made no objection to the widening of the bridge or the occupancy of the strip by the telephone and electric light companies.

The fact that the town did not occupy the whole of the street

at the time of the dedication cuts no figure in this case, because it is shown by the proof that the land was swampy and the whole street was not necessary at that time. As to the time when the street should be opened, the local authorities are the judges. Roads and Streets by Elliott (2d ed.), sec. 118, and note 4, and cases there cited. The case of *Potts* v. *Canton Warehouse Company*, 70 Miss., 462, is decisive of this case, especially the opinion of Judge Campbell on suggestion of error.

*McClurg & Gardner*, on the same side.

This cause is a life struggle between progress and avarice, between the spirit of public advancement and sordid greed for private gain, between an unpatriotic effort to block and cramp the public convenience and natural growth of the community at the subservience of individual interest; a speculative purchase of a narrow, ill-shaped strip of land in the bottom of Indian bayou from ten to fifteen feet average below the surface level and the greater portion of the year under water. Not denying the right of honorable men to create and press such contests, yet this strip of low, submerged land in the very heart of a town that is sure to become a city of no mean proportions is the subject of this litigation. The fact that it has a present value and prospect is self-evident of the hope of the town and the public need of this strip in the future.

The record discloses a cessation of conveyances of this strip from the surveying and platting of that portion of the town north of the bayou in 1888 to the date of the deed originating this controversy, clearly indicating a purpose in the mind of the original owner to dedicate it to the public use; and the building and use of the first bridge sixteen feet wide, and subsequently of the bridge twenty feet wide, both by the county, was an acceptance of the donation, or dedication, of the whole strip lying sixty-six feet between the east boundary of the street to the west boundary thereof all the way across the bayou—surely an extension of the street.

If the owner of lands makes a plat of a city or town, including streets, he must be taken to mean public urban ways in all the term implies. He sets apart, by such act, the land indicated as a street to all public uses to which a public urban way may be properly appropriated. The owners in this case divided by the sub-section line had a common purpose to build a town or a city as marked out by the act of incorporation and surveys and platting, with streets, avenues, and alleys. That common purpose of the original owners, understood, accepted, and acted upon by men who bought lots and built business houses on the south side and bought lots and built residences on the north side of the bayou, is not now to be destroyed by a narrow technical view; all doubts will be resolved in their favor. Elliott on Roads and Streets (2d ed.), 17, 18; *Kinnare* v. *Gregory,* 55 Miss., 612; *Harrison County* v. *Seal,* 66 Miss., 129; *Sanford* v. *Meridian,* 52 Miss., 383; *Vicksburg* v. *Marshall,* 59 Miss., 563; *Briel* v. *Natchez,* 48 Miss., 423; *Theobold* v. *Railroad Co.,* 66 Miss., 279.

*Baker & Chapman,* and *Edward Mayes,* for appellees.

In view of the fact that appellees have shown a perfect title in themselves, the only question presented for decision is, Does the evidence show a dedication of all or any part of the lot in controversy as a street?

It was not in the court below, nor do we suppose that it will be here, seriously contended that the public used any of the lot in controversy as a street for the statutory period of ten years. In fact, the record conclusively shows that the only land used by the public for that period was the land on which the bridge is located. It is true that there is some evidence of the occasional use of land near the center of the bayou east and west of the bridge, but exactly what part of the lot in controversy was used is not shown. *Lanier* v. *Boothe,* 50 Miss., 410, 416, In fact, there is very serious doubt if it was ever used at all after the bridge was built. The court below found that it

was not so used, and on all other questions where there was conflict in the evidence the chancellor found in favor of appellees, and we now submit that his findings on these facts are analogous to the verdict of a jury. *Davis* v. *Richardson,* 45 Miss., 499; *Apple* v. *Genong,* 47 Miss., 189; *Harrington* v. *Allen,* 48 Miss., 492; *Wilson* v. *Beauchamp,* 50 Miss., 24.

It is nowhere conceded that the street known as Front street, shown on Lusk's map to be sixty-six feet wide, extends across the bayou, but all the evidence in the case shows absolutely that this sixty-six foot street does not extend across said bayou. Counsel for appellants do not cite any authority nor show any good reason why the street over the disputed territory would be at least sixty-six feet wide if the ground were level.

The only title or right which appellants assert to the lot in controversy is an easement or right of way under the doctrine of prescription, but it is well settled "that the burden of proving an easement by prescription is upon the party who claims the easement." 22 Am. & Eng. Ency. Law, 1216. This same rule applies to highways acquired by prescription. 22 Am. & Eng. Ency. Law, 1225. Appellants have absolutely failed to show a dedication of any part of the lot in controversy; but even should it be conceded that the testimony is conflicting in reference to this proof, we do not believe that the right in appellants would be sufficiently established over the lot in controversy, because "where the evidence as to the acquirement of an easement by prescription is conflicting, the question whether or not it has been so acquired is for the jury." 22 Am. & Eng. Ency. Law, 1217. And as the chancellor found these facts in favor of appellees, we do not believe the case will be reversed unless it be shown that these facts are opposed to the preponderance of the testimony.

Argued orally by *Eugene Johnson,* and *Robert Powell,* for appellant, and by *Edward Mayes,* for appellees.

WHITFIELD, C. J., delivered the opinion of the court.

The testimony clearly and manifestly establishes the implied dedication of Front street across Indian bayou, with a width of sixty-six feet. It was not necessary that the city should actually use the whole width of the street when the bridge was built originally or later. How much of the sixty-six feet should be used was for the city to determine, according to the city's development and growth. It is not imperative in the case of an implied dedication of a street that the city shall immediately enter upon actual use of the street throughout its whole length and width. As said in *Marion* v. *Skillman* (Ind. Sup.), 26 N. E., 676 (11 L. R. A., 59): "The inference of an intention to dedicate would not be simply to dedicate that portion upon which there was actual travel, but would evidence the intention of the owners that Branson street was to be continued across their land." Citing *Bartlett* v. *Beardmore,* 74 Wis., 485 (43 N. W., 492); *Sprague* v. *Wait,* 17 Pick., 309; *Hannum* v. *Belchertown,* 19 Pick., 311; *Simmons* v. *Cornell,* 1 R. I., 519; *Cleveland* v. *Cleveland,* 12 Wend., 172. See also note to this case. The true doctrine is very well stated by Simrall, J., in *Briel* v. *Natchez,* 48 Miss., at page 435, which we quote, to. approve and reaffirm: "Nor is it necessary, in order to manifest a ratification or acceptance of the dedication, that the municipal authorities should presently open the streets. That may be postponed until the advancing population and private improvements make it necessary. 1 Wend., 487. Dedication of private property to the public enjoyment must always be considered with reference to the use to which the thing is to be appropriated, whether the easement is of a highway, a street, a common, or a park. All rest upon the same general doctrine. Nor is it necessary that there should be user following closely upon the dedication, as where streets are extended over suburban property. It may be years before the convenience of the public, or of those who live upon adjacent lots, on account of the paucity of population, requires that they

should be formally taken in charge by the municipal authorities. Such dedication of streets in a growing town must have such an interpretation as will comport with the common understanding. The proprietor of the ground ought to be held as proclaiming and offering to the public to change his property from rural to urban, to sell it in small parcels with reference to streets and squares. Because the neighborhood is not rapidly settled up, and years may elapse before the city undertakes to work and grade the streets, or before the necessity arises, the city should not, by such nonuser, be held to have relinquished the easement and abandoned its acceptance of the dedication."

*The decree is reversed and cause remanded.*