SUE E. WITHERSPOON *v.* CITY OF MERIDIAN.

1. ADVERSE POSSESSION.  *Streets.  Municipal corporation.*

  The statute under which ten years adverse possession of land confers title, does not apply against the right of a municipality to its streets. *Vicksburg* v. *Marshall*, 59 Miss., 563.

2. SURVEY.  *Street.  Evidence of surveyor; how assailed.*

  An experienced surveyor, having testified positively, from his own knowledge gained by surveys, as to the location of a street, it is not sufficient, to overthrow his testimony, merely to show that the plat exhibited by him does not correspond in some of its measurements with recognized maps of the town, one of which was prepared by him, or that the maps did not correspond with each other.

3. MUNICIPAL CORPORATION.  *Street.  Dedication; how shown.*

  A dedication of land for a street need not be shown by specific grant. Where the owner surveyed and platted land in a town into blocks, lots, and streets, and made deeds to purchasers, in which he described subdivisions according to his survey, and the survey becomes incorporated into the recognized maps of the city, the dedication is sufficiently shown.

4. SAME.  *Adverse possession of street.  Claim of city.  Equitable estoppel.*

  In such case, to bar the municipality on the doctrine of equitable estoppel of its right to remove a fence which encroaches on a street so dedicated, it is not enough to show that the fence was located with the concurrence of the original owner, who had made the dedication, and that the city authorities had delayed for sixteen years to actively assert its claim, during which time they had maintained the street as actually opened, and the abutting owners had improved their lots without knowledge of the city's claim.

FROM the chancery court of Lauderdale county.
HON. SYLVANUS EVANS, Chancellor.

Appellant, Sue E. Witherspoon, filed this bill against the corporate authorities of the city of Meridian to cancel the claim of the city to certain land which it claimed under a dedication by a former owner for public streets. The bill further sought to enjoin the street commissioner from entering upon the land, and appropriating it for street purposes.

There was an answer, denying complainant's right to relief and raising certain issues of fact.

Prior to 1874, the lot in controversy was a part of a large tract owned by L. A. Ragsdale, situated near the outskirts, but within the limits, of the city of Meridian. In anticipation of the city's growth, he had, before that, caused the land to be surveyed and platted into streets, blocks and lots, but the streets were not actually opened. The survey came to be known as the "Ragsdale survey." In 1874 he conveyed to J. W. Fewell a parcel of said land, described in the deed as "all of blocks 1 and 2, according to Ragsdale's survey of the city of Meridian; that is to say, that land lying in said city, and bounded as follows: on the north by Taylor street, on the west by Alabama street, on the south by Barnes street, and on the east by the street dividing the Ragsdale survey from the Lindsey survey." Fewell went into possession of the land, and inclosed it with a fence, which he located on what was supposed to be the true boundaries. Ragsdale, who was familiar with the boundaries, acquiesced in this location of the fences. Fewell continued to occupy the land thus inclosed until 1880, when he sold to complainant by the same description as that contained in the deed to him. Complainant has been in possession of the land ever since, occupying it as her home.

The street designated Alabama street in the deeds, and bounding the land on the west, is now known as Sixteenth avenue, and the street bounding it on the north, and described in the deed as Taylor street, is now styled Fourteenth street. The former street or avenue, as actually opened and used along the western side of the land in con-

troversy, was about sixty feet in width, and, of this, about ten feet on the east side, along the western boundary of the land, had been left for a sidewalk, and was being used as such before and at the time of complainant's purchase. The street immediately north of the lot, formerly known as Taylor street, was much narrower.

In 1890 the city of Meridian, claiming that the fences on the west side of the block embraced a portion of the public street as formerly dedicated by Ragsdale, and that the fences on the north side of the block likewise inclosed a portion of the street, was making ready, by its street commissioner, to take possession of the disputed strips of ground, when the bill was filed and injunction obtained by complainant.

To show its right to the disputed strips of land, the city introduced one John M. T. Hamilton, a civil engineer, who was then, and had been for many years, city engineer and surveyor. He testified that he had made a survey of block 2 a short time before this suit was begun, and found that the fence on the west side extended into Sixteenth street a distance of twenty-four feet and one-half, and on the north side of the block the line of inclosure extended into Fourteenth street a distance of about twenty-one feet. He made this survey, as he testifies, beginning "at an original corner" of the block, south of block 2, which had been previously located by him and found to conform to the other streets and avenues in the Ragsdale survey. He further testified that Ragsdale, who died before this controversy arose, had long ago told him that he had caused his land in Meridian to be surveyed into lots, blocks and streets. The map or plat of this survey was not produced in evidence, but there was testimony tending to show that it had been burned. A map was introduced, known as Robinson & Currie's map, which had been adopted in 1873 by the city authorities as the official map of the city. Hamilton testified that a certified copy of this map had been given to him by Ragsdale, and that the survey of the land in controversy, which he himself had

made, and upon which the city based its claim, conformed to that map. Fewell, complainant's vendor, also testified that he knew the land had been plotted into lots, blocks and streets by Ragsdale, and that this was a matter of general notoriety.

It was shown on behalf of complainant that she bought the land under the belief and with the understanding that the lines were as denoted by the fences; that the streets were being worked by the city authorities as then opened, and that a sidewalk was being maintained along the eastern side of the street; and there was nothing to give her notice that the city then claimed, or would ever claim, more than the land actually in use at that time for a street.

In order to overcome the force of Hamilton's testimony, S. A. Witherspoon, who was an attorney, and also the agent of complainant, his mother, testified that he had carefully examined the plat of the land and streets as made by Hamilton and filed with the answer, and had compared it with the Robinson & Currie map, and with a later official map of the city made by Hamilton in 1887, and that the said plat did not correspond with these maps, or the maps with each other, in the location of the disputed boundaries. He further testified, from measurements made by himself, that the plat exhibited with the answer was not correct in certain particulars and distances. Comparison of the said maps was also made by J. W. Fewell, and certain discrepancies shown.

There was also evidence to show that, if the claim of the city was sustained and the streets widened, their boundaries would include certain improvements erected by complainant and by other lot-owners along the streets, and, at one point, would take in part of an inclosed cemetery. It was also shown that the authorities of the city had never asserted any claim to the land in dispute as against any of the parties.

There was also testimony to show that, after complainant's purchase, the city had narrowed the extension of Sixteenth avenue, as then located, north of Fourteenth street, by giving up about twenty feet along the eastern side of the street, and

had afterwards widened it by taking in about the same quantity of land along the opposite side, the purpose of this on the part of the city being apparently to bring the extension into line with the avenue south of Fourteenth street, and the evidence as to this change presumably was to show that the city authorities, in making it, recognized that the width was only sixty feet. These are the material facts. The opinion contains a further statement. On final hearing the court dismissed the bill, and complainant appeals.

*Miller & Baskin,* for appellant,

Filed a lengthy brief and written argument, as to the questions passed on by the court, making the following points:

1. To show that Ragsdale did not intend to dedicate the land for a street, he sold to Fewell the disputed strip, and placed him in possession.

2. Ragsdale was familiar with the lines, and acquiesced in the location of the fences. This negatives the intention to dedicate. 41 Iowa, 693; 6 Wait's Ac. & Def., 304. The presumption is that the inclosed land along the street belonged to the owner. *Ib.,* 321; 10 S. B. (N. S.), 883. Non-user for many years, is *prima facie* evidence of a release of right. 15 Gray; 22 Vt., 480; 12 Ves., 239. Here the land has never been used by the city, but has been occupied by the owners since it ceased to be a forest. Besides, Ragsdale himself inclosed and used other parts of the disputed strip.

3. A part of the strip of land sought to be taken for a street is shown to be in use as a cemetery, and part is inclosed in the yard of a church. Thus, the public has not considered it a street. The defendant acquiesced in the owner's right by laying off, making and using a sidewalk along the eastern side of the street as located.

4. There is no competent proof that Ragsdale ever made any survey and map of the land. The testimony of Hamilton is insufficient to show it.

5. There is no proof of acceptance of the dedication on

the part of the city. This was necessary. 8 Minn., 494; 61 N. Y., 448. Acceptance could be shown by express acceptance or by repairs. 38 Ill., 322. Dedication may be withdrawn by putting it to uses inconsistent therewith before acceptance. 2 Wait's Ac. & Def., 714; 8 Minn., 494; 14 Mich., 12; 31 Cal., 589. Dedication or acceptance, or both, must be proved by the acts of permission and enjoyment, and the user must have continued twenty years. 2 Wait's Ac. & Def., 715. See also 66 N. Y., 216; 1 Tenn., 533; 71 Ill., 68; 39 Conn., 509; 1 R. I., 93; 8 Ohio, 440. Platting into streets, lots and blocks is but an offer to dedicate. Acceptance by the city must follow, or the owner may retake possession and revoke the offer. 39 Vt., 558; 52 Miss., 383; 54 Me., 361; 32 Ill., 271; 19 Conn., 154; 32 Mich., 279; 66 N. Y., 261; 44 Ga., 529. The ordinances of the city adopted only the Robinson & Currie map. Ragsdale did not cause that map to be made.

6. Conceding a dedication, defendant failed to prove that the disputed strip was in the street, or to prove the width of it. Hamilton's testimony is insufficient to show this. His starting-point was an assumed, not an established, point. His plat does not show correctly the relative position of the land to the adjacent property. It is shown that the map is incorrect in several particulars. It does not agree with the other map made by him, or with other maps of the city. This shows his survey is guess-work.

7. If it be true, as many courts hold, that the general statutes of limitations do not apply to a city in reference to its streets, we submit it is different, under our statute, as to adverse occupancy. Code 1880, § 2668, does not require an action to be instituted by the claimant of land who occupies it. It is express that adverse occupancy alone confers title. There is no exception in the statute. See *Orr* v. *O'Brien,* 14 Am. St. Rep., 277 and note.

8. The city is estopped to assert the right. Even if not bound by the statute of limitations, cases arise in which jus-

tice will require the assertion of the doctrine of equitable estoppel against the public. 79 Ill., 25; 81 *Ib.*, 156:·81 *Ib.*, 114; 91 *Ib.*, 201; 46 Ind., 15; 106 *Ib.*, 361; 45 Iowa, 574; 49 Iowa, 630; 2 Lea, 694.

*Witherspoon & Witherspoon*, on the same side.

*McIntosh & Williams*, for appellee.

The deeds under which complainant holds, conclusively show the dedication. They describe the land according to the "Ragsdale Survey," and by blocks and streets. The survey and dedication were accepted by the city. After that, Ragsdale could not recall the dedication or change the survey. *Sanford* v. *Meridian*, 52 Miss., 383.

The city is not barred. The statute of limitations does not apply to it. If the doctrine of estoppel could ever be invoked against the city, it cannot be done under the facts of this case. *Vicksburg* v. *Marshall*, 59 Miss., 563; Elliott, Roads and Streets, 665; *Driggs* v. *Phillips*, 103 N. Y., 77; 54 Mich., 466; 81 Ill., 158; 76 N. Y., 114.

The public may not have needed the street. The fact that it has not used it is not evidence of an abandonment. 51 Wis., 526; 1 Gray, 218; 118 Pa., 344. The deeds cannot estop the city. They did not convey the streets, but only the blocks. *Brandt* v. *Coal Co.*, 93 U. S., 335; 16 Fed. Rep., 363.

CAMPBELL, C. J., delivered the opinion of the court.

We cannot affirm that the chancellor erred in his conclusion that the complainant had failed to sustain her bill. He was justified in accepting as true the testimony of the civil engineer, Hamilton, who testified positively and as of knowledge, that the avenue and street were as claimed by the defendant. His testimony certainly made out a *prima facie* case for the city. If it was not true, there was a way to assail it and overthrow it. This was not done. An effort

was made to impair and destroy it, by showing the want of correspondence among various maps of Meridian, but, giving full credit to the testimony as to this, Hamilton's testimony that the lines are as stated by him may be accepted as a safe guide to the proper result. It is true that there is no specific evidence as to a dedication of the avenue and street by Ragsdale, but the deeds from him to Fewell and from Fewell to the appellant show that the "block" was in the "Ragsdale survey," and was bounded by streets, and the recognized maps show avenues and streets, and the only real dispute is as to their width; and, as to this, it seems to us, upon all the evidence, the case is with the city.

It is not claimed by counsel for the appellant that the city has lost its right to the openings by the statute of limitations, but the argument is that the city is estopped to claim by what has occurred. We are committed to the doctrine that a public street cannot be lost, and become private property by mere occupancy for the time prescribed to bar actions for land held adversely. *Vicksburg* v. *Marshall*, 59 Miss., 563. We adhere to that, and we are not willing to declare against the doctrine of equitable estoppel as applied to protect individuals against municipal claims under some circumstances. There may be cases where we would not hesitate to use the beneficent doctrine of *estoppel in pais* against a municipality. We can imagine such a case, but this is not one.

*Affirmed.*