CITY OF LEXINGTON v. MARY W. HOSKINS.

[50 South. 561.]

1. STATUTE OF LIMITATIONS. *Adverse possession. Municipalities. Constitution* 1890, *sec.* 104.

   Independently of Constitution 1890, sec. 104, providing that statutes of limitation shall not run against municipal corporations, municipalities do not lose the right to have obstructions removed from streets by adverse occupany thereof for any length of time.

2. EVIDENCE. *Documents. Ancient records.*

   Ancient maps of a municipality, showing streets and lots, appearing on the county records, are presumed to have been recorded by authority, although not formally certified for record.

FROM the chancery court of Holmes county.

HON. JAMES F. McCOOL, Chancellor.

Miss Hoskins, appellee, was complainant in the court below; the city of Lexington, appellant, was defendant there. From a final decree in complainant's favor the defendant appealed to the supreme court. The facts are fully stated in the opinion of the court.

*W. L. Dyer,* for appellant.

Counsel stated the case, citing in his statement the following statutes:—Laws 1836, p. 351; Compiled Laws, 1824–1838, pp. 466, 467, 485; Laws 1833, act approved Feb. 19, secs. 2 and 3, and act approved Mch. 2, sec. 5; Laws 1841, p. 176; Laws 1848, p. 361; Laws 1880, p. 441.

Adverse possession of a part of a street however long continued, does not bar a municipality from removing obstructions to its use as a street. Constitution 1890, sec. 104, is but declaratory, so far as concerns the question here presented, of the law as it existed before the constitution was adopted. *Briel v. Natchez,* 48 Miss. 423; *Vicksburg v. Marshall,* 59 Miss. 563; *Witherspoon v. Meridian,* 69 Miss. 288; *Indianola v. Montgomery,* 85 Miss. 304; Dillon on Municipal Corpora-

tions (4th ed.), secs. 667 to 675. 1 Cyc. 1118, par. C and note 91. See also notes to *Waive v. Kruse,* 26 L. R. A. 449. The seemingly conflicting idea in *Clements v. Anderson,* 46 Miss. 581, is clearly *obiter dicta,* and is contrary to the decisions of this court, both before and afterwards.

The old records and old maps are competent evidence, and fully show a dedication of the land in controversy and its acceptance by the public. They are official records in proper custody. Wigmore on Evidence, sec. 2131, pars. C, E, F and notes; Id., secs. 2137 to 2141 and 2143 to 2148; 2 Ency. of Evidence, 729, pars. J and L, notes 14, 15.

*Boothe & Pepper,* for appellee.

The decisions of this court cited by appellant are well enough, but they are not applicable to the case. There never was a dedication of the land in controversy to the public, hence the adverse possession of appellee and those under whom she claims invests her with title. Surely this court will not hold that a dedication to the public is proved by wholly unauthorized and unauthentic copies of an unestablished map made by some private person, although made in 1833. There is no other evidence, or pretended evidence, of a dedication. The old map was not a public record and it was improperly recorded in the records of the county. That it was so placed of record does not change its character or give it validity. Time does not render incompetent evidence competent, nor give sanctity to unauthorized acts, nor render admissible hearsay testimony. No competent evidence of a dedication of Mulberry street was offered; the incompetent evidence tendered was duly excepted to and properly disregarded by the chancellor.

BRAME, Special Judge,* delivered the opinion of the court.

The question involved in this case is as to the right of the city of Lexington to use and occupy a strip of land as part of a

---

* SMITH, J., recused himself in this case and L. Brame, Esq., a member of the supreme court bar was appointed as special judge and presided in his place.

street.   There is no serious disagreement as to the principles of law controlling in the case, and hence the important consideration is first to arrive at a definite and correct conclusion on the facts.   If the decree appealed from rests alone upon controverted facts, and it appears that there was no error of law, we, of course recognize the rule that the chancellor's finding is not to be disturbed unless opposed to the clear preponderance of the testimony.   The material facts are substantially as follows:

· The county of Holmes was created in 1833, and was authorized to locate a county site within three miles of the center.   O. W. Beall and Samuel Long each agreed to donate thirty acres of land for this purpose.   Accordingly, in June, 1833, each executed a bond for title, and afterwards, in 1841, gave a deed conveying the adjacent tracts, making sixty acres, to the board of police of the county; the recited consideration being the location of the county site.   In each of the deeds the land was described as being bounded as follows: "Beginning at the center of the courthouse on the sectional line between sections 35 and 36, in township 15, range 2 east," etc.   The land thus conveyed, in a square or rectangle, formed the basis or site of the town of Lexington, which was incorporated in 1836.   Meantime, before the incorporation, there had been a survey and plat of the land made by one Benjamin Griffin in 1833, it seems under the direction of the board of police.   This survey divided the land into lots and streets; the courthouse being the center.

There is no record of the original plat; but what purports to be a copy thereof, made by Fleet C. Mercer, surveyor of Holmes county, of date April 21, 1851, and duly recorded about that time in the office of the chancery clerk, appears in the record. Accompanying this are the field notes of the survey of the town of Lexington, or, rather, what purports to be a copy thereof, signed by Benjamin Griffin, the surveyor, dated July 9, 1833. These field notes purport to describe the lines that were run in making the original plat, and state that the initial points were indicated by posts set in the ground.   This copy of the field

notes is not certified regularly by the chancery clerk; but attached to the same is an informal certificate by one L. H. Doty, who recites therein that he was employed by the board of supervisors to copy the original book of field notes and the plat, and that both are correctly copied. This certificate is signed "L. H. Doty, per A. G. Doty," and is dated July 23, 1894. Referred to in the record is a map made of the town of Lexington in 1884. This map was used for some time, but has been mislaid, and could not be found. A later official map made in 1897, purporting to be a copy of the map of 1884, is recorded in the chancery clerk's office, and is made an exhibit in this record. After this suit was brought, another survey was made, showing lots, width of streets, direction, etc., and also the location and description of the strip of land in controversy. The original plat of this last survey, by agreement of the parties, has been certified to this court, and is a part of the record in this case.

On January 18, 1908, the appellee, Miss Hoskins, who is the owner of lot 104 in the town of Lexington, or the north part thereof, filed the bill in this case against the city of Lexington and the marshal and street commissioner, averring that the municipal authorities had recently made an order requiring that her fence be drawn in on the north side of her lot some distance, in order to widen or open what was claimed to be a street, now known as "Mulberry," and which the municipal authorities asserted to be forty feet wide. As shown by the recent survey and testimony, Mulberry street, which is the northern boundary of appellee's lot, as it is now opened and used, is twenty-three feet wide at the west end, where it connects with Wall street, which runs north and south, and is twenty-seven feet nine inches wide at the east end, where it connects with Yazoo street, running north and south. Lot 104 is designated on the several maps or plats above referred to, and is bounded on the north, east, and west by the streets above mentioned. The plat shows Mulberry street to be straight and forty feet wide. The disputed strip, which is embraced within appellee's

inclosure, is seventeen feet wide at the west end, and twelve feet three inches wide at the east end, being one hundred and thirteen feet six inches long.

Appellee averred in her bill that she and those under whom she claims have been in the open, adverse possession of lot 104 including the disputed strip on the north, for a great many years, dating back to a period prior to the Civil War; and the proof shows this to be true, though there was some controversy as to whether the fence on the north had not been moved out into the street during the period remembered by the witnesses. The defendants demurred to that part of the bill setting up title by adverse possession, and answered part, and the answer was made a cross-bill. In the cross-bill, the facts above referred to as to the original location of the town and the several surveys and plats are set out, and it is claimed that Mulberry street, forty feet wide, was dedicated, and was a public street, and it was averred that appellee, and those under and through whom she claims, in inclosing lot 104, had encroached on the street to the extent above stated. The complainant answered the cross-bill, setting up substantially the facts averred in the original bill, and claiming that she was the owner of the land to the full extent of her inclosure, and that she had been in the open, adverse possession thereof, claiming as owner, for many years longer than the period of limitation. The defendant excepted to so much of the answer as set up title by adverse possession. On final hearing, a decree was entered in favor of complainant, from which this appeal is prosecuted.

There were various objections made to testimony, and other questions were raised; but we do not deem it necessary to refer to these in detail. Nor do we consider it necessary to express an opinion specifically on the points raised by the demurrer to the original bill and the exceptions to the answer of defendant to the cross-bill. On the whole record, we think it is sufficiently shown that there was a dedication of the street forty feet wide, and that the appellee and those under whom she

claims have encroached on the street to the extent above indicated; that is to say, twelve feet three inches at the northeast corner of the lot, and seventeen feet at the northwest corner. The dedication of the street forty feet wide being shown, it follows that the occupancy of a part thereof, though adversely and under claim of ownership, cannot affect the right of the municipality to have the street opened. *Briel v. Natchez,* 48 Miss. 423; *Vicksburg v. Marshall,* 59 Miss. 563; *Witherspoon v. Meridian,* 69 Miss. 288, 13 South. 843; *Indianola, etc., Co. v. Montgomery,* 85 Miss. 304, 37 South. 958.

Section 104 of the Constitution of 1890, providing that statutes of limitations in civil causes shall not run against the state, or any subdivision or municipal corporation thereof, is but declaratory of the common law, firmly established in this state, so far as the rights of a municipal corporation to its streets are concerned. In this case, it is evident to us that the description of appellee's lot 104 has reference to the maps or plats referred to above. It was not shown that there was any other map on which lot 104 appeared, and there seems to have been an entire correspondence and harmony between a series of maps which extend over a period of more than fifty years, in which this lot (104) is represented as being bounded on the north by a street forty feet wide.

The technical objections to the formality of the certificates cannot prevail against the ancient records, showing the survey. These records were placed in the record books of the county, and, though not formally certified, after this great lapse of years, are presumed to have been placed there by a proper authority.

The decree is reversed, and a decree will be entered here, dismissing the bill and granting the relief prayed for in the cross-bill.                                                    *Reversed.*