CITY OF JACKSON v. MERCHANTS BANK & TRUST COMPANY.

[73 South. 573, Division A.]

MUNICIPAL CORPORATION. *Streets. Encroachments. Estoppel of city.*
Where complainant's predecessor in title owned a triangular lot at the intersection of two streets and desiring to erect a building thereon employed a contractor to erect such building who obtained a permit from the clerk of the city but was told by him

that before the building could be erected it would be necessary for the city engineer to establish the street lines at that point and accordingly the city engineer did establish such street lines, but erroneously placed the street line on one of the streets several feet over the true and correct line. In such case where the building was erected on the line given by the city engineer and extended several feet into the street, the city was estopped from injuring or damaging the building while it stood on the strip of ground in the street, but the public was not divested of title to such strip, and complainant's only right was to have its possession quieted and confirmed so long as the wall might stand on the strip.

Appeal from the chancery court of Hinds county.

Hon. O. B. Taylor, Chancellor.

Bill by the Merchants Bank & Trust Company against the City of Jackson. From a decree granting relief in part both sides appeal.

The facts are fully stated in the opinion of the court.

*Wm. Hemmingway,* for appellant.

Granting that estoppel applies to municipal corporations, the act must be within the scope of the authority of its officers. (28th. Cyc., 465.)

In only two cases has the doctrine of estoppel even been hinted at by our court. They are *Witherspoon* v. *Meridian,* 69 Miss. 288, 13 So. 843; *Vicksburg* v. *Marshall,* 59 Miss. 563. In the Witherspoon case the court said it was conceivable that estoppel might arise, and in the Marshall case it said it was possible as to certain persons the city was estopped to deny the correctness of a doubtful survey, but did not say it was estopped as to appellee, Marshall.

In the Marshall case the people had built on the line on which Marshall had also built. The attempt of the city was to force him back and place him out of line with the buildings previously constructed. In this case the city is attempting to make the Merchants Bank & Trust Company get back on the line with the other property-owners.

The city found it necessary when they paved Robinson street to establish the grade by an ordinance. It is true they would have to get their information from a survey. If it is necessary to establish a grade by an ordinance, how much more necessary is it that property lines should be acted on by the council?

Unless the courts prevent the councils and boards of aldermen from disregarding the rights of the public on streets, it might be very easy for certain of these people to acquire a preference in these streets. The streets might be closed for the purpose of some one to construct a building on it.

It must be borne in mind that this building was constructed in 1906, and in 1908 acting by ordinances, sidewalks were laid on the north side of Robinson street from Short street to the city limits on the line claimed to be correct by the city, showing no intent of the city to acquiesce in the line on which this building was constructed, and was due notice to any one encroaching on the street that the city intended to claim the full width from the city limits to Capitol street.

Can the city be estopped by an unauthorized act of a city employee, it being also an act which the power to perform cannot be delegated by the legislative body of the city, when the party dealing with the city had knowledge of the condition and is charged with the knowledge of the power of the agents of the city? There is no evidence to show that the city made any compensation to the abutting property-owners at any time.

Appellee and cross-appellant either wholly misconceives or deliberately evades appellant's and cross-appellee's theory of this case. The brief of appellee and cross-appellant is neither responsive to the state of facts nor the authorities cited as sustaining its contention.

In quoting from the decision in the case of *Witherspoon* v. *The City of Meridian,* 69 Miss. 288, 13 So.

843, attorneys for the appellee come to a period too soon. Judge CAMPBELL who wrote the decision in that case added to the quotation of the attorneys "but this is not one."

The state of facts in the case of *Krause* v. *The city of El Paso,* 101 Texas, 211, 14 L. R. A. (N. S.) 582, is in nowise parallel with the state of facts in the case at bar for the reason that Mrs. Lewis, through her agent with knowledge accepted the line in the face of and in spite of positive admitted present knowledge of the fact that the line so accepted was an encroachment upon the street as dedicated, marked out by monuments, accepted by the public and used as a highway.

In addition to this, the rule in Texas bearing upon the operation of the statute of limitation is different from the Mississippi rule. The doctrines of equitable estoppel and the limitation of action are analogous. In Texas the statute of limitation operates against a municipality. See Elliott on Roads and Streets, Vol. 2, paragraph 4187, note 73. Upon a checking of the cases as authority for the proposition, that a municipality can be equitable estopped, develops that fact that many of the cases so cited arise in those states in which the doctrine of the operation of the statute of limitation against municipalities has been adopted. In Iowa the statute of limitation operates against municipalities; In Illinois and Montana title can be acquired by prescription. *Oliver* v. *Synhorst,* 48 Oregon, 293, 7 L. R. A. (N. S.) 243, and note cited as authority to sustain the doctrine announced in Vol. 10, Ruling Case Law, pages 712-713, has been superceded by the latter case of the *City of Portland* v. *Poulson Lumber Company,* 46 L. R. A. (N. S.), page 1311, which last case was followed by the learned chancellor in the decree rendered by him in this cause.

In Mississippi the statute of limitation does not operate against a municipality. Because of its very nature

the doctrine of *stare decisis* does not apply to an equitable estoppel against a municipality.

The court can look at the facts in this case and do pure justice to the public, unhampered and untrammeled by prior utterances of the court even had they been statements of the law and not *obiter dicta* as they were.

*Mayes, Wells, May & Sanders,* for appellee.

This case is controlled by the beneficent doctrine of estoppel *in pais* against the municipality, the city of Jackson, appellant herein, as was correctly held by the chancellor. But the chancellor erred in limiting the city's estoppel to such time as the building as at present constructed should remain standing.

The rule governing this case is succinctly stated in Volume 10, Ruling Case Law, pages 712 and 713, as follows:

"Consequently courts in many cases have applied the rule that a municipality may be equitably estopped, as against an abutting owner on a highway, street or alley, who has been encouraged or permitted to make improvements on his property with reference "to what he believed in good faith to be the correct line, from establishing the true line, if its establishment would necessitate the removal of such improvements or result in their irremediable injury."

And in support of this statement of the rule, the following cases are cited: Note 3. *Carlinville* v. *Castle*, 177 Ill. 105, 52 N. E. 383, 69 A. S. R. 212; *Lee* v. *Harris*, 206 Ill. 428, 69 N. E. 230, 99 A. S. R. 176; *Peoria* v. *Central Nat. Bank*, 224 Ill. 43, 79 N. E. 286, 120 A. S. R. 258; *Pella* v. *Scholte*, 24 Ia. 283, 95 Am. Dec. 729; *Smith* v. *Osage*, 80 Ia. 84, 45 N. W. 404, 8 L. R. A. 633; *Von Tobel* v. *Lewistown*, 41 Mont. 226, 108 Pac. 910, 137 A. S. R. 733; *Oliver* v. *Synhorst*, 48 Ore. 292, 86 Pac. 376, L. R. A. (N. S.) 243 and note. Notes: 18 L. R. A. 147, 36 L. R. A. (N. S.) 1057.

Immediately following the statement of the above general rule, the author continues: "Especially when the city has run the street line, will it be estopped to change such line to the correct position so as to necessitate the destruction of a building erected in accordance with the line so run."

In support of this announcement is cited the case of *Krause* v. *El Paso,* 101 Tex. 211, 106 S. W. 121, 130 A. S. R. 831, 14 L. R. A. (N. S.) 582, and this case is highly interesting and instructive; almost identical in its facts, except that the facts of the instant case called even more strongly for the application of the principle than in the Krause case.

The rule is stated in 3 McQuillan on Municipal Corporations, sec. 1398, pages 2973, 2974, 2975, 2976; 2 Dillon on Municipal Corporations (4 Ed.), section 675; *Von Tobel* v. *City of Lewistown,* 41 Mont. 226, 108 Pac. 910, 137 A. S. R. 737; *Vicksburg* v. *Marshall,* 59 Miss. 563; *Witherspoon* v. *Meridian,* 69 Miss. 288, 13 So. 843; *Webb* v. *Dempolis,* 95 Ala. 116, 13 So. 289, 21 L. R. A. 62, 44 L. R. A. 407; *Mobile* v. *Sullivan Timber Co.,* 129 Fed. 298, 63 C. C. A. 412; *Philadelphia Mfg. & Tr. Co.* v. *Omaha,* 63 Neb. 280, 93 Am. St. Rep. 412, 88 N. W. 523; *Simplot* v. *Chicago M. & S. Ry. Co.,* 5 McCrary, 158, 16 Fed. 350; *Ralston* v. *Weston,* 46 W. Va. 544, 76 Am. St. Rep. 834, 33 S. W. 326.

The doctrine here stated is well supported by many well considered cases, from which we cite the following: *City of Big Rapids* v. *Comstock,* 65 Mich. 78, 31 N. W. 811; *Peoria* v. *Johnson,* 56 Ill. 45; *Lee* v. *Mound Station,* 118 Ill. 304, 8 N. E. 759; *Carlinville* v. *Castle,* 177 Ill. 105, 69 Am. St. Rep. 212, 52 N. E. 383; *Jordan* v. *City of Chenoa,* 166 Ill. 530, 47 N. E. 531; *Simplot* v. *Dubuque,* 49 Iowa, 630; *Paine Lumber Co.* v. *Oshkosh,* 89 Wis. 449, 61 N. W. 1108. Why should a municipal corporation which has led a citizen into error and caused him to expend large sums of money in the erection of permanent improvements upon a portion of the highway, after

twenty years' occupancy, be permitted to destroy . the improvements without compensation, simply to assert a legal right? A sense of justice common to ' all civilized people revolts at such a rule of legalized wrong..

The court will perceive that our complaint of the. chancellor's decree is the limitation of the time fixed by. the decree of the city's estoppel. We maintain that our title to the narrow strip of land in question should be confirmed and quieted perpetually. As was done by our court in the case of *Vicksburg* v. *Marshall, supra,* and in the other cases cited in support of the statement in Volume 10 R. C. L. *supra.*

We respectfully submit that the chancellor's decree should be affirmed on direct appeal and reversed on cross-appeal and final decree should be entered by this court granting the prayer for relief in appellee's original bill, and quieting and confirming appellee's title to the strip of land occupied by said building as at present constructed..

Holden, J., delivered the opinion of the court.

The appellee, Merchants Bank & Trust Company, exhibited its bill in the chancery court of the First district of Hinds county, seeking confirmation of its title to a strip of land occupied by it, and alleged to be part of Robinson street in the city of Jackson. The appellant, city of Jackson, filed its answer and cross-bill, denying that the appellee was entitled to the relief prayed for in the bill of complaint, and prayed that the appellant, city of Jackson, be decreed the possession of the said strip of. land in controversy and that the building be removed therefrom. From a decree granting the relief, in part, as prayed for by the complainant in the court below, the appellant, city of Jackson, appeals here; and the appellee, Merchants' Bank & Trust Company, cross-appeals to this court, contending that the whole relief prayed for should have been granted to it by the lower court.

This legal controversy is based upon the following state of facts: About ten years before this suit was filed in the lower court, Mrs. Gillie Lewis owned a triangular lot at the intersection of West Capitol and Robinson streets in the city of Jackson; the said lot abutting on the said two streets. Mrs. Lewis employed J. C. Mathews, a building contractor, to erect a two-story brick building on said lot. Contractor Mathews applied to the proper city official of Jackson for a building permit, which was issued, and the officer issuing the permit informed the contractor that it would be necessary for the city's engineer to establish the street lines of Robinson and West Capitol streets at this lot before building operations could be commenced in the erection of said building. Accordingly, the contractor applied to the city engineer in the employ of the city, requesting him to establish said street lines, and delayed starting the building operations for several days waiting on the city engineer to so establish the said lines. The said city engineer, acting within the scope of his employment, and in the performence of the duties of this office, surveyed, established, and marked the said street lines at the intersection of the said streets adjoining the lot in question; and the building was constructed and erected on said lot in conformity with said street lines so established by the city engineer. It appears now that the south wall of said brick building is several feet over the true and correct line in Robinson street. There was no objection on the part of any officer of the city, nor of any citizen thereof, as to erecting the building where it now stands. The correctness of the lines so established by the city engineer, or the right to occupy the strip of land by the building in conformity to such lines, was not disputed or objected to, nor even mentioned, until about ten years after the building was erected and the property had passed by conveyances into the hands of the appellee Bank. The appellee endeavored to have its title

to this strip of land made secure, and the strip vacated by the city, by an ordinance of the city; but, for some reason, the ordinance was passed and then repealed, whereupon the appellee filed its bill to have confirmed and quieted its title to the strip of land here in question, alleging that the south wall of the building erected upon the said lot is several feet over the line into Robinson street, and setting up the facts showing the cause of the mistake in erecting the building over the line into the street. The chancellor had a full hearing of all the facts and circumstances in this case, and his finding of fact is here copied from his decree:

"That the predecessor in title to the complainant of that part of lot No. 13 of block No. 9, being a triangular lot at the intersection of Robinson and West Capitol streets, desired to erect a substantial two-story brick building thereon, and, before doing so, was required by the municipal authorities of the city of Jackson to delay the building of said brick storehouse until the city engineer should locate the street lines, and that the line upon which the south wall of said building was built was located and marked out by the city engineer of the city of Jackson personally, or by some subordinate sent for that purpose, and the said line so marked out by the city engineer was held out to the then owner of the property as the north line of Robinson street, and that the then contemplated two-story brick building was at large expense erected along and in conformity to the line so marked and designated by the city engineer as the north line of Robinson street, as to all parts of said building except the gallery, which extends into the street beyond the line of the building, and the then owner of said property acted in good faith and relied upon the accuracy of the line which the municipal authorities of the city of Jackson required her to get from the city engineer before she was permitted to erect said building, and for a long period of time, to wit, about ten years, the said building so erected has

stood upon said lot projected into the street, without objection from any party interested in the matter.''

Upon this finding of the fact the chancellor decreed that:

''The city of Jackson is now estopped to claim that part of Robinson street consisting of a narrow strip upon which is the south wall of said building, so long as the building and wall stands there.''

The relief granted to the appellee was based upon the doctrine of estoppel *in pais*. The appellant contends that estoppel *in pais* cannot be successfully invoked here against a municipality, for the reason that the acts of the officers of the municipality are not binding upon the city, and can, in no event, divest the city of its title and interest in the public streets thereof. The appellant also urges that the contractor, Mathews, who was the agent of Mrs. Lewis, the grantor of appellee bank, knew at the time he erected the brick building on the lot that he was building several feet over the line into Robinson street, and that the line established by the city engineer was not the true and correct line; that, consequently, the appellee bank had notice, through its grantor, and her agent, Mathews, the contractor, as to the true and correct lines of the property; and therefore estoppel *in pais* cannot be successfully invoked here. But it appears from the testimony in this record, and especially by the finding of fact of the chancellor, that the contractor, Mathews, did not pretend to know the true and correct lines, but merely stated that, according to the old fence lines, he thought the newly established line by the city engineer was several feet over into Robinson street; but the city engineer established, marked, and pointed out what he said was the true and correct lines, and instructed the contractor to build according to the lines he had officially established. There is no merit in this latter contention of the appellant, city of Jackson.

The only question presented in this case that deserves serious consideration is whether or not the doctrine of estoppel *in pais* is applicable here against the municipality of Jackson. It seems to be well settled that the doctrine of equitable estoppel may be successfully invoked against a municipality in cases where the particular facts justify its application.

"Consequently, courts in many cases have applied the rule that a municipality may be equitably estopped, as against an abutting owner on a highway, street, or alley, who has been encouraged or permitted to make improvements on his property with reference to what he believed in good faith to be the correct line, from establishing the true line, if its establishment would necessitate the removal of such improvements or result in their irremediable injury." 10 R. C. L. 712, citing, in note 3, the following cases: *Carlinville* v. *Castle,* 177 Ill. 105, 52 N. E. 383, 69 Am. St. Rep. 212; *Lee* v. *Harris.* 206 Ill. 428, 69 N. E. 230, 99 Am. St. Rep. 176; *Peoria* v. *Central Nat. Bank,* 224 Ill. 43, 79 N. E. 296, 12 L. R. A. (N. S.) 687; *Chicago* v. *Illinois Steel Co.,* 229 Ill. 303, 82 N. E. 286, 120 Am. St. Rep. 258; *Pella* v. *Scholte,* 24 Iowa, 283, 95 Am. Dec. 729; *Smith* v. *Osage,* 80 Iowa, 84, 45 N. W. 404, 8 L. R. A. 633; *Von Tobel* v.*Lewistown,* 41 Mont. 226, 108 Pac. 910, 137 Am. St. Rep. 733; *Oliver* v. *Synhorst,* 48 Or. 292, 86 Pac. 376, 7 L. R. A. (N. S.) 243 and note; Notes: 18 L. R. A. 147; 36 L. R. A. (N. S.) 1057.

See, also, 2 Dillon on Municipal Corporations (4th Ed.), sec. 675.

"Especially when the city has run the street line will it be estopped to change such line to the correct position so as to necessitate the destruction of a building erected in accordance with the line so run." 10 R. C. L. 713.

This court, in the cases of *Vicksburg* v. *Marshall,* 59 Miss. 563, and *Witherspoon* v. *Meridian,* 69 Miss. 288, 13 So. 843, indicates very clearly that the doctrine of

equitable estoppel for the protection of individuals against injury to property, in proper cases, may be successfully invoked against municipalities. In *Weatherspoon* v. *Meridian,* 69 Miss. 288, 13 So. 843, Chief Justice CAMPBELL said:

"And we are not willing to declare against the doctrine of equitable estoppel as applied to protect individuals against municipal claims under some circumstances. There may be cases where we would not hesitate to use the beneficent doctrine of estoppel *in pais* against a municipality."

We are easily pursuaded that, with the facts of the instant case before him, that eminent jurist would have applied the doctrine of estoppel *in pais;* and we think the facts and circumstances here are sufficient to justify the application of the doctrine against the appellant municipality.

In the case of *Krause* v. *City of El Paso,* 101 Tex. 211, 106 S. W. 121, 14 L. R. A. (N. S.) 582, 130 Am. St. Rep. 831, the question here involved is fully and ably discussed by the Texas court, and we agree with the rule announced in that case. The court, in that case, said:

"Ordinarily, a municipal corporation is not subject to estoppel by reason of the negligent or unauthorized acts of its officers; but it is generally recognized that there are exceptions to that rule."

And it held that the city of El Paso was estopped in a case where the facts are very similar to those in the controversy here.

After a careful consideration of the case at bar, we think that it comes within the exception to the rule, and that the appellant should be estopped and precluded from injuring and damaging the property of the appellee, while it stands on the strip of ground in the street, which was erected there with the consent and by express direction of the municipality through its authorized agents.

But the appellee bank contends in its cross-appeal that the lower court should have granted the full relief asked for in its bill, by decreeing a perpetual injunction against the municipality, forbiding it from ever disturbing appellee in the use of the strip of land in question, or in other words, to vest, in effect, the complete fee simple title in the appellee. As to this, we disagree with the appellee. In applying the doctrine of equitable estoppel in this character of case, a court of equity cannot be called upon to do any more than to prevent the municipality from injuring the individual. The court will not divest the public of the title, as appellee acquired no title by lapse of time, under the doctrine invoked; but all that a court of equity should be expected to hold is that the municipality must not injure or destroy the property of the individual, even though it be in the street, because by its own acts and representations the mistake was made and the condition created. Equity will not take from the public any property rights that are not absolutely necessary to be taken in order to preserve the rights of the citizen, against whom the municipality is merely estopped.

Therefore we hold that the decree of the chancellor, decreeing "that complainant's right of possession thereof is hereby quieted and confirmed, so long as the wall may stand upon the said strip of land where so located." is eminently correct.

In view of these conclusions, we think the decree of the chancellor should be affirmed, both on direct appeal and cross-appeal.

*Affirmed.*