CITY OF ELLISVILLE *v.* WEBB.*

(Division A.   May 28, 1928.   Suggestion of Error Overruled Aug. 7, 1928.)

[117 So. 836.   No. 27230.]

*Corpus Juris-Cyc. References: Adverse Possession, 2CJ, p. 221, n. 96, 97; Dedication, 18CJ, p. 112, n. 47; p. 119, n. 52; On the rule as to encroachment of fence on highway as affecting title or rights of public, see annotation in 6 A. L. R. 1210; 13 R. C. L. 57; 3 R. C. L. Supp. 7.

*J. T. Taylor*, for appellant.

*Collins & Collins,* for appellee.

McGowen, J. Appellee, C. D. Webb, exhibited his bill in the chancery court of Jones county against the city of Ellisville, alleging that he, Webb, was the owner and in possession of lots 1, 2, 3, of block 5, Follett's survey of the city of Ellisville, Jones county, Miss., and also a strip of land twenty feet wide and ninety feet long parallel to the west end of said three lots in said city in the southwest quarter of northwest quarter of section 3, township 7 north, range 12 west, of said county; that said lots are thirty feet wide and one hundred and twenty feet long according to the survey, but that, at the time said lots were laid out and platted and sold to the predecessors in title of the appellee some thirty or forty years ago, they went into possession of said lots, and also a twenty-foot strip of land, which strip is involved in this litigation. Attached to the bill was an abstract of title, and it was also alleged in the bill that appellee and his predecessors in title had been in open, notorious, exclusive, and adverse possession of said twenty-foot strip of land. It was further alleged that the city of Ellisville was setting up claim to this strip as a part of Front street in said city, and that the claim of the city of Ellisville cast a doubt, cloud, and suspicion upon appellee's title. The bill prayed that the claim of the city of Ellisville to said strip of land be canceled, and that the title to same be quieted and confirmed in the complainant, appellee here. The abstract showed the record title in lots 1, 2, and 3, block 5, Follett's survey, to be in appellee.

The answer of the city of Ellisville put in issue all the material allegations of the original bill, admitting that lots 1, 2, and 3, block 5, were thirty feet wide and one hundred and twenty feet long, but denied that appellee's predecessors in title thirty or forty years ago went into possession of the disputed strip of land; admitted that the abstract of title shows a good paper title to the lots, but denied that appellee and his predecessors had claim to said strip of land; denied that appellee could set up any statute of limitations, or any other claim, against the city of Ellisville, a municipality of Mississippi; and asserted claim to the twenty-foot strip here involved. The answer further alleged that the lots embraced in this controversy were owned by Hardy and Scott, and that the map filed January 15, 1891, shows a platting, and that the lots were sold by Hardy and Scott with reference to the map, and alleged that, at the time of the making of the map, and ever since, Front street was dedicated to the city as eighty feet wide at this point, which would include the twenty-foot strip here involved. The answer alleged that Front street so dedicated extended from Ivy street, in the heart of the city, down to the county agricultural high school, eighty feet wide, and that the city now needs this twenty-foot strip, and there is an obstruction, a fence, interfering with the city making the street the full width at that point. The city prayed that its answer be made a cross-bill, and that the court order the removal of all obstructions from the street.

There does not seem to have been any process on the cross-bill, or any answer thereto.

On final hearing the court entered a decree in favor of the appellee, Webb, quieting and confirming title to the twenty-foot strip in him, and dismissing the cross-bill, and the city of Ellisville prosecuted the appeal here.

According to the evidence, Webb purchased lots 1, 2, 3, block 5, from Craft, and Webb admitted that these lots were thirty feet wide and one hundred twenty feet long.

He further showed that this projection of twenty feet west extended along the line of Front street twenty feet further west than the property to the north and south along Front street. He asked and was refused, permission to erect a building on this twenty-foot strip. Pine street is immediately north of these lots intersecting Front street, and Front street is bounded on the west by railroad property. Webb testified that he purchased this land as fenced, and that he, and his predecessors in title, had claimed all the land under this fence as part of lots 1, 2, and 3.

Appellee offered in evidence a map, which, we may say, as the evidence in the case shows, is the map referred to by all the deeds to the lots in the vicinity of the strip of land here in controversy. This map is marked, "Map of Ellisville, Jones Co., Miss. T. 7, N., R. 12, W.," and appears to be a map made by N. W. Brandon, civil engineer and is dated September, 1889, filed for record January 15, 1891, and copied into record January 17, 1891, which map shows Front street at a uniform width of eighty feet, and the blocks and lots of land fronting west on said street as being uniform on the eastern boundary line of said Front street. There is nothing on the map here in the record to indicate that blocks 4 and 5 extend any further from Court street on their east to Front street on their west than any other blocks of land running from Ivy street to the south boundary of the map. In other words, if these lots were one hundred twenty feet east and west, all the lots along Front street from Ivy to Ash streets would be the same, one hundred twenty feet. There is nothing on the map to indicate any projection of twenty feet further. On the north side of block 5, at the intersection of Pine and Front streets, are the figures "80," on the south side of block 5, at the intersection of Magnolia and Front streets, are the figures "80," and on the south side of block 4 at the intersection of Laurel and Front streets are the figures

"80," and likewise, on the map, appear the figures "80" at each block and street intersected from Ash street, on the south, up to Ivy street, and even further north.

The court below evidently based its decree in favor of appellee, quieting his title to this land, on the testimony of Duvall, who testified that twenty-three years ago, as street commissioner of the city of Ellisville, he examined this map, and that the street lines of Front street along this strip, and, in fact, along blocks 4 and 5, showed a projection of twenty feet, and that he procured and opened the street known as Front street west of these two blocks, and to the west of the strip of land in controversy sixty feet wide, leaving a projection of twenty feet to the east of the street along these blocks. He further testified that the map had been changed "here" and "there" with reference to this twenty-foot strip, which testimony is not very clear. One looking at the map here could not well understand how lots could be one hundred and twenty by thirty feet with this projection showing on the map twenty-three years ago. However, the word, "Front" is printed "F R O N T," to the west of block 4, which indicates Front street. Duvall said he did not know whether the word "Front" was there or not when he examined the map with a view of laying out the street. No question was asked him about the figures "80," which may refer to Front street, or may refer to streets intersecting. He said that north from the depot to block 5 the street was eighty feet wide, and also testified that thirty or forty years ago there was a hotel on this strip, and it was also shown that at one time there was a livery stable thereon.

Counsel for appellee frankly concedes that he cannot claim for appellee this strip of land by adverse possession as against the city of Ellisville, and he could not do so, because section 3096, Code of 1906 (section 2634, Hemingway's 1927 Code), provides that statutes of limitation shall not run against the state or any subdivision, or mu-

nicipal corporation, thereof, and section 104, Constitution of 1890, is in the following language:

"Statutes of limitation in civil cases shall not run against the state, or any subdivision or municipal corporation thereof."

In the case of *Lexington* v. *Hoskins,* 96 Miss. 163, 50 So. 561, this court held that municipalities do not lose the right to have obstructions removed from streets by adverse occupancy thereof for any length of time.

Counsel for appellee further says that nobody disputed what Webb Duvall said about the record (referring to the map), and that if what he said was true, and the court took it as true, some one had, since these property owners took possession of this land, altered the map so as to show that this twenty-foot strip was a part of the street, and that, of course, this alteration having been made after the property owners were in possession of said twenty-foot strip, it could not affect their rights in the matter. He further frankly concedes that there is an implied dedication by virtue of the map, and that if it were not for Duvall's testimony as to the alteration of the map, such dedication would have been binding.

The record does not disclose how Duvall arrived at his conclusion that the map had been altered, and his evidence, as a whole, does not overturn the implied dedication made of the street by the filing of the map by Hardy and Scott, and the selling of the lots by original grants with reference to this street, and the purchase by this appellee with reference to this street, and his frank admission that the lots were one hundred and twenty by thirty feet.

The act of the street commissioner, Duvall, twenty-three years ago, cannot bind the city in extending its streets as dedicated to it. This street is shown to be the very main artery of the city of Ellisville, a much used street, leading to the business section, and where, as here, a landowner has platted his land showing a street

of uniform width, and it is shown to be eighty feet wide north and south of the point in controversy, such testimony as Duvall's is insufficient to overcome the implied dedication as shown by the facts. Giving full weight to the personal inspection made of the strip in controversy by the court, and full weight to the testimony of Duvall, the evidence was insufficient to overcome the implied dedication as shown by the map and all the deeds offered in evidence. And the fact that it has been fenced for thirty-three years cannot operate to deprive the city of the right to use it when the city authorities find a necessity therefor. Front street was dedicated for street purposes, and the word "FRONT" could not have been written alongside lot 4 without the alteration being apparent, and, as this was the very point that Duvall was investigating when he looked at the map, the location of that word there would have been fixed in his memory more definitely than any other thing in connection with the map; and yet he says he cannot tell whether the word was there or not when he examined the map. If it was there, his whole testimony falls flat, because blocks 4 and 5, according to his testimony, at that time showed a projection of twenty feet, and, if that were true, the word "FRONT" was written right on this twenty-foot projection.

Eliminating the effort of the appellee to show that the map had been changed, this case is ruled by the cases of *Witherspoon* v. *Meridian,* 69 Miss. 288, 13 So. 843, and *Indianola, Light, Ice & Coal Co.* v. *Montgomery,* 85 Miss. 304, 37 So. 958.

A decree should have been entered for the city of Ellisville awarding to it this twenty-foot strip of land involved in this controversy as a street, and a decree will be entered here to that effect, and the bill of complaint in the court below will be dismissed.

*Reversed, and decree here for appellant.*