MELVIN, et ux. *v.* PARKER

No. 39514 March 16, 1955 78 So. 2d 477

432

*Melvin, Melvin & Melvin, Pershing B. Sullivan, F. B. Collins,* Laurel, for appellants.

*Buchanan & Montgomery,* Laurel, for appellee.

LEE, J.

This is an appeal by L. B. Melvin, Sr., and wife from a decree of the Chancery Court of Jones County, which confirmed the tax title of Mrs. Jeff D. Parker to the lots here involved, and which rejected the Melvins' claim of title to certain portions thereof.

Mrs. Parker filed her bill of complaint against the State, the Land Commissioner, and Mrs. C. R. Garraway, C. R. Garraway, Jr., John S. Garraway and Mrs. J. C. Feduccia, heirs of C. R. Garraway, deceased, and L. B. Melvin and wife, seeking to have her tax title confirmed to Lots 17 to 24, inclusive, and other lands, of the Dr. Garraway Subdivision to the City of Laurel, Mississippi as per plat thereof on file in the Chancery Clerk's office of the Second Judicial District of Jones County, Mississippi. The deraignment of title, as set out in the bill, showed the following: The land in question was patented out of the government, and the title thereto, by mesne conveyances, became vested in C. R. Garraway. After Dr. Garraway had caused these lots to be platted under date of January 25, 1929, thereafter on February 14, 1929, the plat was duly filed for record, and was recorded, in the chancery clerk's office. The lots were assessed, according to the descriptions in the plat, to Dr. C. R. Garraway both for the State and County and the City of Laurel. On September 19, 1932, the lots were sold to the State for the taxes of 1931 and to the City of Laurel for the taxes of both 1930 and 1931. On Octo-

ber 12, 1939, the State executed to the City of Laurel a forfeited tax patent for said lots. On January 22, 1940, Dr. Garraway executed a quitclaim deed to the City for the lots. The City, in turn, on July 26, 1941, executed a quitclaim deed to F. B. Ross for the lots, and thereafter, on August 22, 1941, F. B. Ross conveyed and warranted the lots to Mrs. Jeff D. Parker. Certified copies of the record of lands, sold for taxes both to the State and to the City of Laurel on September 19, 1932, were attached to the bill. It was also alleged that Mrs. Parker was the sole, true, legal and equitable owner of the lots, and that the complainant did not ''[know under what claim the defendants, L. B. Melvin and wife, Mrs. L. B. Melvin, may be claiming a portion of her lands.''

The Melvins, in their answer, admitted that the land was patented out of the government, and that the title, by mesne conveyances, passed to C. R. Garraway, and that he platted the Dr. Garraway Subdivision. But they denied that the lots were lawfully assessed and sold or that title thereto passed to the State and to the City or that the subsequent conveyances thereof were valid. On the contrary, they averred that they purchased Lots 1, 2, 25, 26, 27, 28, and 29 of the Subdivision in October 1936, and that they have been in exclusive and adverse possession thereof ever since; and that they purchased Lot 3 thereof on April 8, 1941, and that they have also held that lot by adverse possession ever since. The answer also set up the following grounds of demurrer: That the bill showed no equity; the deraignment of title was not in accordance with the statute; the tax sales and subsequent conveyances were void; and that on account of laches and estoppel, the complainant can not assert her title against them.

The proof for the complainant established all of the material allegations of her bill of complaint. The original plat of the ''Dr. Garraway Subdivision in the City of Laurel, Jones Co., Miss.'' which showed it to be ''a part of the N. E. ¼ of the N. E. ¼ Section 31, Town-

ship 9, Range 11 West, Jones County, Miss.'' was offered in evidence, and a photostatic copy thereof was made a part of the record.

For the defendants, the proof showed that Dr. Garraway, at one time, lived on this property, and that his home was located on the lots which are now owned by the Melvins; that there was, at the time, an old wire fence running along the same course as the present fence, and which the Melvins claim to be the dividing line; and that, before the filing of the plat, Dr. Garraway expressed his purpose to retain for his home all of the property south and east of the fence. However, when the land was platted into the subdivision, no reference was made to the fence. Besides the plat shows an alley, 15 feet wide, between the lots here in controversy and the lots owned by the Melvins, except Lot 3, which is north of the alley. The fence crosses the east side of Lot 17 about 65.5 feet north of the alley, and, running in an irregular course, crosses the west line of Lot 17 approximately 9.5 feet north of the alley. Thereafter it follows a westerly course just north of the north line of the alley, according to the plat, though at one place, for a short distance, it practically coincides with that line. At other places, the fence meanders at times either to the north or to the south of that line. The Melvins' first deed was dated November 30, 1936. They had moved on the premises a short time previously. After they took possession, Dr. Garraway, according to L. B. Melvin, said that the fence was on the line. This evidence was objected to and excluded. The evidence leaves no doubt that the Melvins, after they moved on the premises, took possession of all land south and east of the fence, and that they have since exercised all acts of ownership over the property of which it was susceptible.

The appellants contend that their demurrer should have been sustained.

But it must be remembered that the deraignment of title, in a suit to confirm a tax title, must not be con-

fused with the deraignment, which is required, under Section 1325, Code of 1942, in other bills to confirm and to cancel and remove clouds. The cases upon which the appellants rely arose out of confirmations, which are provided for under Section 1325, supra, and are not applicable here.

Section 1314, Code of 1942, gives a specified procedure for the confirmation of tax titles. In Section 219, Griffith's Mississippi Chancery Practice, 1950 Ed., it is said: "In a bill to confirm a tax-title the description of the premises should be the same as, or the actual equivalent of, that contained in the tax-deed, for it is well settled that a tax-deed cannot be reformed; * * * . And the bill must show that the title had passed out of the government at the date of the imposing of the tax lien for which the tax sales was made, * * * . But after the showing of the parting of title by the government it is not necessary to deraign the title anterior to the tax-deed, and the deraignment, other than the government's sale, begins with the tax-deed. Nor is it necessary to go into the details of the defendant's title, nor deraign same, for if the tax-deed be valid it cuts off all others, and if it be invalid the title or want of title in the defendants is of no concern. * * * It is therefore only necessary to allege sufficient, as to the defendants, to show that they are interested in the land sold; and a tax-title may be confirmed against a defendant in possession."

 █ The exhibit to the bill of the complete copy of the tax deed was prima facie evidence that the sale was valid and complied with every prerequisite thereto. Section 220, Griffith's Mississippi Chancery Practice, 1950 Ed.

 █ Since the bill of complaint, in all respects, followed the directives pointed out above, the demurrer was therefore properly overruled.

 █ The original forfeited tax patent No. 38,509 from the State to the City of Laurel conveyed lots 7 to

24, inclusive, Garraway Addition in Section 31, Township 9, Range 11, and other lands, all in Jones County, Mississippi. This patent was recorded October 20, 1939. The State subsequently issued a cancellation as to a part of the property conveyed by this patent. The instrument recited that: "This patent cancelled as to lots marked out in red, Void, Prior Patents No. 34,461, 34,337, 35,134, 35,174, 32,276, 36,597, 36,700 and 36,710. No refund, Cancelled by approval of the Attorney General, 1-2-40." Red lines were drawn through certain descriptions. The appellants contend, on that account, that the descriptions were void.

But Lots 7 to 24 inclusive Garraway Addition were not drawn through. Such Lots were shown by the cancellation to be in Section 31, Township 9, Range 11, in Jones County, although "Mississippi" was marked out. However, the State, County and City, and even the forty acre subdivision of Section 31, Township 9, Range 11 West appear in the description of the Dr. Garraway Subdivision.

The lists of lands sold to the State bear the caption "Record of Lands Sold for Taxes, To State ........ In the County of Jones, Second District, Mississippi" and describe the land as being in Dr. Garraway Add. in Section 31, Township 9, Range 11. The lists of lands sold to the City of Laurel bear the caption "The State of Mississippi, Jones County, City of Laurel," and the descriptions are according to the "Garraway Addition."

Section 3148, Code of 1930, Section 9772, Code of 1942, provides for the assessment of lands in a city according to the plat thereof. The proof showed that there was no other Garraway subdivision or addition in the City of Laurel or in Jones County. The Garraway Addition furnished the clue to show what land was assessed and sold. Section 3151, Code 1930, Section 9775, Code 1942; Jefferson v. Walker, 199 Miss. 705, 24 So. 2d 343; Albritton v. Fairley, 116 Miss. 705, 77 So. 651; Reed v. Heard, 97 Miss. 743, 53 So. 400. As to the omis-

sion of the State and County in which the lands are situated, see Butler v. Thomas & Co., 150 Miss. 804, 116 So. 824; Gex v. Dill, 86 Miss. 10, 38 So. 193; Ladnier v. Ladnier, 75 Miss. 777, 23 So. 430.

■■ The omission of the abbreviation of "Dr." before the words "Garraway Addition" was not a fatal defect. Martin v. Smith, 140 Miss. 168, 105 So. 494.

In regard to appellants' claim of title by adverse possession, it is necessary to consider Section 104, Constitution of 1890, which is as follows: "Statutes of limitation in civil causes shall not run against the state, or any subdivision or municipal corporation thereof." See City of Ellisville v. Webb, 151 Miss. 302, 117 So. 836.

■■ The title of both the State and the City ripened before the appellants acquired their title. Regardless of the extent and quality of the adverse possession exercised over the lots after their acquisition, under the facts in this case, the appellants were not entitled to claim therefor until title passed again into private ownership. Cotten v. Cotten, 203 Miss. 316, 35 So. 2d 61; Winstead v. Winstead, 204 Miss. 787, 38 So. 2d 118; Smith v. Smith, 211 Miss. 481, 52 So. 2d 1.

■■ The City's title was subordinate only to that of the State; and when it obtained the patent from the State, the title became perfect in the City. Hence, adverse possession could not be successfully asserted and maintained until after July 26, 1941, when the City parted with its title. Since this suit was filed prior to the expiration of ten years from that date, the appellants could not and did not acquire title by adverse possession.

■■ Appellants also contend that the appellee should not be permitted to maintain her suit by reason of estoppel and laches.

There was no substantial proof that either the State or the City induced the appellants to make improvements on these lots so as to effect an estoppel in accordance with the rule in City of Jackson v. Merchants Bank &

Trust Co., 112 Miss. 537, 73 So. 573. Compare Brown v. City of Gulfport, 213 Miss. 457, 57 So. 2d 290.

Neither was there proof that the appellants relied upon the act, representation or silence of Mrs. Parker, and on that account, changed their situation and suffered damage therefrom. Davis v. Butler, 128 Miss. 847, 91 So. 279, 709; Day v. McCandless, 167 Miss. 832, 142 So. 486. It does not appear that they lost anything, or were placed at a disadvantage by her. Crooker v. Hollingsworth, 210 Miss. 636, 46 So. 2d 541.

██ █ Appellee could not be barred on the ground of laches inasmuch as she brought her suit in less than ten years from the time that the City of Laurel parted with its title. Smith v. Smith, supra; Waldrop v. Whittington, 213 Miss. 567, 57 So. 2d 298.

In 1940 the Melvins tore down an old tool shed, and, in the same place, built a two room servant house. They expressly disclaimed that they were seeking relief on that account. The barn was shown to be in the alley, and was not therefore on the lots in question.

Appellants further contend that it was error to exclude the testimony of L. B. Melvin that Dr. Garraway had said that the fence was on the line.

██ ██ At that time, Dr. Garraway had no title to the lots. The State and the City owned the title. The lots had been assessed and sold according to the plat thereof which he had caused to be made. The descriptions were appropriate ones, and the assessments and sales were valid. Dimitry v. Jones, 149 Miss. 641, 115 So. 786. It is obvious that Dr. Garraway could not, at that time, by attempting to state that the fence was the line, deprive the State or the City of any part of their property. Hence that evidence was properly excluded.

The effort on the part of the appellants to discredit the plat of the Dr. Garraway Subdivision was not sustained by the evidence.

No reversible error appears in the record; and the decree of the lower court must be, and is, affirmed.
Affirmed.

*McGehee, C. J.,* and *Hall, Kyle* and *Holmes, JJ.,* concur.